# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-3875

_____

| | | |
|---|---|---|
| Fatma Floyd, | * | |
| | * | |
| Appellant, | * | |
| | * | |
| v. | * | |
| | * | Appeal from the United States |
| State of Missouri Department of Social | * | District Court for the |
| Services, Division of Family Services, | * | Eastern District of Missouri. |
| Rehabilitation Services for the Blind; | * | |
| Gary Stenger, in his official capacity; | * | |
| Carmen Schulz, in her official and | * | |
| individual capacity for the Missouri | * | |
| Rehabilitation Services for the Blind, | * | |
| | * | |
| Appellees. | * | |

_____

Submitted:  May 13, 1999

Filed: August 17, 1999

_____

Before WOLLMAN, Chief Judge, FLOYD R. GIBSON, and BEAM, Circuit Judges.

_____

WOLLMAN, Chief Judge.

Fatma Floyd appeals from the district court's[1] grant of summary judgment in favor of the State of Missouri Department of Social Services (Department) and the individual defendants on her employment discrimination claims brought under the American with Disabilities Act (ADA), 42 U.S.C. § 12111-12117; Title VII of the Civil Rights Act of 1964 (Title VII) 42 U.S.C. § 2000e-2000e-17; 42 U.S.C. § 1983; and the Missouri Human Rights Act (MHRA), Mo. Rev. Stat. § 213.055. She also appeals from the district court's denial of her motion to amend her complaint. We affirm.

**I.**

Floyd is a blind Turkish Muslim who was employed by Rehabilitation Services for the Blind (RSB), an agency operating under the auspices of the Department. From 1990 to 1994 she worked as a rehabilitation teacher, providing services for blind residents of Missouri. She received exemplary evaluations from her supervisors.

In 1994, Floyd applied to be supervisor of RSB's North St. Louis office. Initially, she and four others were interviewed for the position. Floyd received the highest rating among these applicants, but the Department determined that a more qualified applicant pool should be developed. As a result, three additional candidates were recruited to apply. Floyd and two candidates from the second group were selected for a final interview.

This interview consisted of an oral presentation by each candidate. It was evaluated by Dave Vogel, deputy director of RSB, Charles Voelker, a field supervisor,

---

[1]The Honorable David D. Noce, United States Magistrate Judge for the Eastern District of Missouri, who presided over the case by consent of the parties pursuant to 28 U.S.C. § 636(c).

Sondra Larson, assistant deputy director of the department, and Gary Wunder, a representative of the National Federation of the Blind (NFB), a consumer group advocating the interests of its blind members. Following the presentations, Larson recommended that Floyd be offered the position. Voelker recommended that the position be offered to Mark Laird, another candidate. The final hiring decision was to be made by Vogel. After considering Wunder's views and the views of a representative of the Missouri Council for the Blind (MCB), a second consumer group, Vogel decided to make an informal job offer to Laird.

Laird did not accept the position. Instead of making an offer to Floyd or the remaining candidate, the Department decided to seek other applicants. Floyd received a letter stating, without elaboration, that she had not been selected for the position. On November 21, 1994, Floyd filed an internal grievance against the Department, alleging that the position was offered to a "less qualified white Christian male," referring to Laird. Appellant's Br. at 5. Floyd resigned in September of 1995 after accepting a position with Nebraska Services for the Visually Impaired.

Floyd filed this suit in August of 1996, alleging discrimination based on disability, national origin, and religion. She also alleged a claim under the MHRA based upon retaliatory conduct and a claim under 42 U.S.C. § 1983, alleging a violation of due process and equal protection, together with a claim of unlawful discrimination.

After receiving defendants' motion for summary judgment, Floyd moved to amend her complaint to include a claim for violation of her First Amendment right to free association. The district court denied Floyd's request to amend and entered summary judgment in favor of the defendants.

## II.

We review the district court's grant of summary judgment de novo, applying the same standard that was applied by the district court. See Hossaini v. Western Mo. Med. Ctr., 140 F.3d 1140, 1142 (8th Cir. 1998). Summary judgment is proper if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. See id.; Fed. R. Civ. P. 56(c).

### A.

We assess Floyd's discrimination claims under the familiar burden shifting framework described in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). See Kiel v. Select Artificials, Inc., 169 F.3d 1131, 1134-35 (8th Cir. 1999) (en banc), petition for cert. filed, 67 U.S.L.W. 3758 (U.S. June 2, 1999) (No. 98-1938) (disability under ADA); Ghane v. West, 148 F.3d 979, 981 (8th Cir. 1998) (national origin); Tart v. Hill Behan Lumber Co., 31 F.3d 668, 671 (8th Cir. 1994) (Title VII and MHRA); Richmond v. Board of Regents of the Univ. of Minn., 957 F.2d 595, 598 (8th Cir. 1992) (section 1983); Mann v. Milgram Food Stores, Inc., 730 F.2d 1186, 1188 (8th Cir. 1984) (religion).

Initially, Floyd must establish a prima facie case of discrimination. See Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 252-53 (1981). The burden then shifts to the Department "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." McDonnell Douglas, 411 U.S. at 802. If the Department satisfies its burden of production, Floyd must show that the proffered reason is pretextual. See Burdine, 450 U.S. at 253. At all times the ultimate burden of persuasion remains with Floyd. See Rothmeier v. Investment Advisors, Inc., 85 F.3d 1328, 1332 (8th Cir. 1996).

Because the Department concedes that Floyd met her burden to establish a prima facie case of discrimination, we first consider whether the Department articulated a nondiscriminatory reason for failing to promote Floyd. See, e.g., id. at 1332. The Department presented three nondiscriminatory reasons for denying Floyd the promotion: she tended to take matters outside of the department if she did not like the decision regarding a particular case; she did not display a willingness or ability to effectively manage the staff; and the MCB was strongly opposed to her appointment to the supervisory position. The burden to articulate a nondiscriminatory justification is not onerous, and the explanation need not be demonstrated by a preponderance of the evidence. See Buchholz v. Rockwell Intern. Corp., 120 F.3d 146, 150 (8th Cir. 1997); Hayes v. Invesco, Inc., 907 F.2d 853, 855 (8th Cir. 1990). We conclude that these explanations satisfy the defendants' burden under step two of the McDonnell Douglas framework.

Floyd claims that these reasons were pretextual because the evidence clearly shows that she was the most qualified candidate. She notes that she was the only candidate with a master's degree and the only candidate that was a Certified Rehabilitation Specialist. Her reliance on these facts is misplaced, however. The Department did not argue that Floyd was not qualified for the job, only that she was not the right person for the job in view of her lack of the leadership skills needed to be effective in the position. Likewise, that Floyd received the highest interview score of any first-round candidate does not establish that she was the most qualified person for the job following a complete assessment.

We do not "weigh the wisdom of any particular employment decision." Ruby v. Springfield R-12 Pub. Sch. Dist., 76 F.3d 909, 912 n.7 (8th Cir. 1996). Presumably, all three candidates that were invited to the second stage interview were qualified individuals. Thus, the first-round interview scores and prior performance ratings were not critical to the ultimate decision made by the Department when evaluating the three candidates at the second interview stage. See Hutson v. McDonnell Douglas Corp.,

-5-

63 F.3d 771, 779 (8th Cir. 1995) (finding that high performance ratings were unconvincing circumstantial evidence of discrimination in second stage of reduction in force, because all employees could be considered competent). This evidence, without more, is insufficient to allow a reasonable jury to find that the Department's articulated reasons were pretextual.

As further evidence of pretext, Floyd alleges that RSB deviated from the Department's policies for selecting candidates. An employer's failure to follow its own policies may support an inference of pretext. See Young v. Warner-Jenkinson Co., 152 F.3d 1018, 1024 & n.6 (8th Cir. 1998). In this case, however, the record indicates that the departures in policy affected all candidates, not only Floyd. Thus, they do not support an inference of pretext. See Chock v. Northwest Airlines, Inc., 113 F.3d 861, 864-65 (8th Cir 1997) (affirming summary judgment for employer when evidence indicated deviation in policy was applied to plaintiff as well as other employees). Moreover, RSB implemented the procedural changes in response to growing pressure from consumer organizations regarding its operations. See Brousard-Norcross v. Augustana College Ass'n, 935 F.2d 974, 976-77 (8th Cir. 1991) (stating that departure from policy did not support inference of pretext when departure was driven by student complaint).

Even if we agreed with Floyd that the Department did not give its true reasons for failing to promote her, summary judgment would not be precluded. See Rothmeier, 85 F.3d at 1335. In order to survive summary judgment, Floyd must show that the Department's proffered reasons for the decision were a pretext for discrimination. See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515 (1993); Rothmeier, 85 F.3d at 1334. "[A] reason cannot be proved to be a 'pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason." Hicks, 509 U.S. at 515; see also Hill v. St. Louis Univ., 123 F.3d 1114, 1119-20 (8th Cir. 1997) (affirming grant of summary judgment in favor of employer where plaintiff's evidence failed to raise an inference of discriminatory intent).

The only evidence of discriminatory motive presented by Floyd was that one co-worker called her "Fatso"[2] and others played Christmas music and referred to a December party as a "Christmas party" rather than a "holiday party." Each of these allegations, however, fails to show the required discriminatory animus. The term "Fatso," even if it is related to Floyd's national origin or religion, was uttered by an employee who was a nondecisionmaker. Therefore, it is insufficient as a matter of law to support a reasonable inference of pretext. See Ghane, 148 F.3d at 982 (finding that derogatory remarks made by nondecisionmaker and with no connection to adverse employment decision were insufficient to support reasonable inference of pretext); Hutson, 63 F.3d at 779 (stating that remarks made outside the decisionmaking process are not enough to support a finding of pretext).

Likewise, the Christian religious customs were practiced by nondecisionmakers and were unrelated to the decisionmaking process. See, e.g., Ghane, 148 F.3d at 982. Moreover, these events occurred in 1995, after Floyd filed the initial complaint. Thus, even if the existence of Christian references were held to constitute the basis for an inference of discrimination, a question that we need not decide, they were not evidence sufficient to survive summary judgment because they were not temporally linked to the decision making process. See Simmons v. Ocè-USA, Inc., 174 F.3d 913, 916 (8th Cir. 1999) (finding events two years prior to adverse employment decision would not support an inference of discrimination). Accordingly, because Floyd has not shown sufficient evidence of discrimination based on religion, disability, or national origin, summary judgment was proper on these claims. See id. at 916 (citing Walton v. McDonnell Douglas Corp., 167 F.3d 423, 426 (8th Cir. 1999)).

---

[2]Floyd was known as "Fatosh" at RSB, "Fatso" apparently being a derivation thereof.

**B.**

The MHRA prohibits any retaliatory act against an employee for participation in an investigation, hearing, or proceeding involving a charge of discrimination. See Cross v. Cleaver, 142 F.3d 1059, 1075 (8th Cir. 1998) (quoting Mo. Rev. Stat. § 213.070(2)). To establish a prima facie case of retaliation Floyd must establish that she complained of discrimination, that the Department took adverse action against her, and that the adverse action was causally linked to the complaint of discrimination. See Kiel, 169 F.3d at 1136 (citations omitted).

There is no dispute that Floyd complained of discrimination. She argues that after she filed the complaint, the Department removed cases from her workload. Nothing in the record, however, indicates that this action resulted in a demotion or salary change. Although her job duties changed, there is no evidence supporting an inference that this change constituted an adverse employment action. "[N]ot everything that makes an employee unhappy is an actionable adverse action." Montandon v. Farmland Indus., Inc., 116 F.3d 355, 359 (8th Cir. 1997) (quoting Smart v. Ball State Univ., 89 F.3d 437, 441 (7th Cir. 1996)).

Floyd also claims that she became the subject of a baseless investigation. The catalyst for the investigation, however, was a client complaint alleging that Floyd and another department employee had engaged in a biased assessment of the client's situation. After Floyd left employment with RSB, the investigation continued, eventually resulting in the reprimand of the other employee. The continuation of the investigation after Floyd left RSB indicates that there was no causal connection between the investigation and Floyd's complaint. See Scusa v. Nestle USA Co., No. 98-2866, slip op. at 17 (8th Cir. June 23, 1999) (stating plaintiff is required to produce evidence that adverse employment action is causally related to protected activity).

Floyd also attempts to link the behavior of her coworkers with a retaliatory motive, stating that following her complaint she was treated as a "pariah," or an outsider. Appellant's Appx. at 00552-53. Despite a change in the general tone of the workplace, Floyd did not identify any reduction in her title, salary, or benefits. Thus, she cannot show an adverse employment action. See Scusa, slip op. at 17-19 (citing Manning v. Metropolitan Life Ins. Co., 127 F.3d 686, 692 (8th Cir. 1997) (finding hostility by coworkers was not adverse employment action)). Furthermore, she has offered no evidence that any actions by her coworkers were causally related to her complaint. See Scusa, slip op. at 19-20.

## III.

Floyd argues that the district court erred by denying her leave to amend her complaint to include a charge of discrimination based on her First Amendment right to free association. Specifically, Floyd claims that she was denied the promotion because of her membership in the NFB. We review the district court's denial of leave to amend for an abuse of discretion. See Ferguson v. Cape Girardeau County, 88 F.3d 647, 651 (8th Cir.1996) (citing Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 330 (1971)). "Although amendment of a complaint should be allowed liberally to ensure that a case is decided on its merits, . . . there is no absolute right to amend." Ferguson, 88 F.3d at 650-51 (internal citations omitted).

Here, the original complaint was filed on July 25, 1996. Defendants filed their motion for summary judgment on August 29, 1997. It was not until April 14, 1998, that Floyd moved to amend her complaint to include the free association claim.

Floyd contends that she was unaware of a potential free association claim until defendants filed their motion for summary judgment. The district court noted, however, that Floyd had considered as early as November of 1994 the possibility that her relationship with the NFB may have been a factor in her termination. See Floyd v.

-9-

Department of Soc. Servs., No. 4:96 CV 1495 DDN, slip op. at 20 (E.D. Mo. September 30, 1998) (citation omitted); Appellant's Appx. at 00156. Moreover, seven and one-half months elapsed between the defendants' motion for summary judgment and Floyd's motion to amend the complaint. Although Floyd attempts to explain this delay by a change in her counsel during this period,[3] we cannot say that the district court abused its discretion in denying her motion to amend. See Ferguson, 88 F.3d at 651 (stating motion to amend properly denied when made after undue delay) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)).

Because we conclude that Floyd has not produced evidence sufficient to survive summary judgment on any of her discrimination claims, we need not consider her remaining issues.

The judgment is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

[3]Current counsel entered their appearance on December 29, 1997.