Cozetta A. AUSLER Plaintiff

v.

ARKANSAS DEPARTMENT OF
EDUCATION Defendant

No. 4:01CV337GH.

United States District Court,
E.D. Arkansas,
Western Division.

Feb. 18, 2003.

Austin Porter, Jr., Little Rock, for Plaintiff.

Arkansas Attorney General, By Melanie Winslow Hoover, Esq., Assistant Attorney General, Little Rock, for Defendant.

## MEMORANDUM OPINION AND ORDER

GEORGE HOWARD, Jr., District Judge.

Currently pending before the Court is Arkansas Department of Education's (ADE) motion for summary judgment to Cozetta A. Auster's complaint, filed May 29, 2001, alleging unlawful discriminatory employment practices that she was subjected to because of her race; that she was subjected to a hostile working environment because of her race; that she was retaliated against when she registered complaints about working conditions; and a pendent state law claim of defamation.[1]

Inasmuch as the Court is persuaded that plaintiff's complaint relative to employment decisions regarding her job duties and compensation implicate motive, credibility and intent, the Court finds that this claim raises a genuine issue of material fact and the Court denies ADE's motion for summary judgment on this claim, but grants ADE's motion on the remaining claims for the reasons discussed hereinafter.

## I.

### Background

Plaintiff began her employment with ADE in January 1998, as a temporary employee working for a temporary agency. In March 1998, plaintiff was hired as a full time employee of ADE as a Secretary I in the Special Education Unit of ADE. As part of her job duties, plaintiff had to type, file records and answer the telephone. Plaintiff held this position of Secretary I from March 1998, to September 1998, when she was promoted to Secretary II position in Title I, which is designated as the School Improvement Unit. The Secretary II position is classified as a Grade 13 position. Title I was responsible for collecting data for reports that ADE was required by the federal government to be acquired and submitted. Arlen Jones, an African–American, was plaintiff's supervisor.

Plaintiff contends that in September 2000, Janinne Rigg, a white female, became her director and instituted some changes; that Patsy Hammond, a white female and a Title I accountant, was moved out of Title I and plaintiff was required to assume some of the job duties of Patsy Hammond.

On November 22, 2000, plaintiff received a memorandum from her supervisor, Arlen Jones. Plaintiff was advised that her job duties would change commencing on November 27, 2000, and that she was being reassigned. Plaintiff also received a memorandum from her supervisor expressing concerns he had regarding her job performance and attitude. Plaintiff contends that she had many discussions with her supervisor regarding upper management's desire to dismantle Title I, but had never had any prior conversations with Arlen

---

1. Plaintiff was prosecuting this action *pro se* until September 6, 2002, when the Court, *sua* *sponte,* appointed attorney Austin Porter to represent plaintiff.

Jones regarding his alleged dissatisfaction with her job performance. Plaintiff denies the assertions that she did not meet her deadlines, and that monthly reports were five to ten days late.[2]

The memorandum from Mr. Jones designating plaintiff's duties after November 27, 2000, stated in material part:

1. Compile data statewide for Title I evaluations by completing the Annual State Performance Reports and Arkansas State Annual Evaluation Report Booklet.

2. Perform desk audits, reconcile Annual Financial Reports and Demographic Data Collection Reports.

3. Provide training for Title I Document Examiner in the correct procedures for handling plans, related data and current office procedures.

4. Organize and disseminate information by designing, modifying and/or developing charts, brochures, forms, reports to be used by Title I to obtain information of LEA, State Program office, or other divisions and agencies as requested.

5. Perform other duties as assigned by the Title I Coordinator.

Plaintiff contends that her reassignment, as well as new job duties, was in essence a position that was higher than the Secretary II position that she held and that she was not receiving the compensation and classification for the job which was, in essence, an Administrative Assistant I position; and that having served as office manager, she was familiar with the job responsibilities of the Administrative Assistant I position.

On November 30, 2000, plaintiff filed a grievance with the State Grievance Committee regarding the job reassignment, but the Committee held that plaintiff was, in essence, seeking a pay increase which was outside the jurisdiction of the grievance policy.

ADE contends that the job duties assigned to plaintiff are not the same as the job duties listed on the vacancy announcement of Administrative Assistant I and, accordingly, plaintiff was not reassigned to the position of Administrative Assistant I. The duties listed on the vacancy announcement of Administrative Assistant I are:

*JOB DUTIES:*

Works under general supervision of the Title I coordinator; performs data check on statewide Demographic Data Collection Reports; compiles and analyzes evaluation data; prepares State Evaluation Report; revises evaluation forms and instructions; performs desk audits and reconciles Annual Financial Reports; helps develop computer programs for evaluation and financial report data; provides training of new staff and technical assistance; conducts studies; assists with Title I state meetings; represents Title I in meetings relating to evaluation data, program review procedures, computer data records, etc.; and performs other duties as assigned.

Plaintiff, in response, contends that she performed 90 per cent of the job duties, as a Secretary II, that Linda Kanthak, a white female, performed as an Administrative Assistant I and was not compensated as an Administrative Assistant.

Ms. Kanthak testified in her deposition that as an Administrative Assistant I, she generated Demographic Data Collection Form, Title I Annul Financial Report and Title I Part D, Annual Financial Reports. Ms Kantahak further indicated that some

---

2. Plaintiff contends that Ms. Janinne Rigg was the source of the job changes and that

Mr. Jones, her immediate supervisor, did not really have much control over the matter.

of the duties plaintiff performed are comparable and parallel to the Administrative Assistant I position, such as demographics and financial reports; that, in essence, she was not surprised that plaintiff was performing duties in the Administrative Assistant I position in Title I after she left the Title I section in May 2000; that the job duties she performed as Administrative Assistant I were also performed by her when she was classified as a Secretary I; that several years after her employment commenced as a Secretary I, financial reports were added to her job duties and that she requested an upgrade and her Secretary I position was reclassified to Administrative Assistant I.

Following Ms. Kanthak's departure from Title I section in May 2000 as Administrative Assistant, Marilyn Graham, an African–American female, was given the position on November 27, 2000. Plaintiff contends that her duties as Secretary II were actually assigned to Ms. Graham who was an Administrative Assistant I while plaintiff was actually performing the duties of Administrative Assistant I. Ms Graham remained in the Title I program as Administrative Assistant for two months and then requested a lateral transfer to a different section.

On December 19, 2000, plaintiff filed her second grievance because she had not received an increase in compensation for the Administrative Assistant I job duties that she, allegedly, was performing and, in addition, alleging that a white female was performing the same duties that plaintiff performed in her capacity as Secretary II.

On January 11, 2001, plaintiff filed a third grievance contending that Mr. Jones had refused to provide her training; that white females were being trained and that a white female assigned to train her refused to train her.

On March 7, 2001, plaintiff was advised by Janinne Riggs that plaintiff would have to vacate the Title I program. On March 22, 2001, a white female, Joe Ellen Brumett, assumed the duties of Administrative Assistant I position and was later classified as a Secretary II, but was not required to process annual financial reports as plaintiff was required to perform, and such duties were assigned to an accountant for the Title I program. Plaintiff contends that creating the annual financial report was a major part of her job duties.

On March 21, 2001, the grievance committee again refused to consider plaintiff's alleged grievances.

ADE, in addition to asserting that plaintiff was not performing Administrative Assistant I duties, further asserts that plaintiff did not meet the minimum qualifications required to hold the position of Administrative Assistant I. The position vacancy announcement sets forth the following qualifications for Administrative Assistant I:

*MINIMUM QUALIFICATIONS*

The formal education equivalent of a bachelor's degree in general business, public administration, or a related field; or the formal education equivalent of a high school diploma; plus one year of college course work in general business, public administration or a related field; plus four years of experience in specialized or a related field applicable to work performed.

ADE contends that plaintiff has not received a degree nor does she have one year of college course work in general business, public administration or any field to meet the minimum qualifications.

On May 29, 2001, plaintiff instituted this action after receiving her right to sue communication from the Equal Employment Opportunity Commission.

## II.

### DISCUSSION

#### A. Summary Judgment Standard

Under Fed.R.Civ.P. 56(c), a court may grant summary judgment if it is evident "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

The moving party, initially, has the burden of informing the court of the basis of its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The non-moving party shall file "specific facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56(e). See also: Local Rule 56.1 of this Court. The non-moving party must do more than simply show "that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538. In essence, "[t]o withstand a motion for summary judgment, a party need not prove in its favor an issue of material fact. All that is required ... is sufficient evidence supporting a material factual dispute that would require resolution by a trier of fact." *Hase v. Missouri Division Of Employment Security*, 972 F.2d 893, 895 (8th Cir. 1992). The test for determining whether a genuine issue of material fact exists is the same as the test for granting a directed verdict or judgment as a matter of law; and in applying the test, the court must view the evidence in the light most favorable to the nonmovant. *Anderson v. Liberty Lobby, supra.*

 It is commonly recognized that where motive, intent and credibility are central factors in employment discrimination cases, summary judgment is generally inappropriate. See: *Davis v.Fleming Companies, Inc.*, 55 F.3d 1369, 1371 (8th Cir.1995), where the Court made the following observation:

> Courts have recognized the difficulty in disposing of issues of discriminatory or retaliatory intent at the summary judgment stage. Summary judgments should be sparingly used and then only in those rare instances where there is no dispute of fact and where there exists only one conclusion. All the evidence must point one way and be susceptible of no reasonable inferences sustaining the position of the nonmoving party.

The Court of Appeals for the Eighth Circuit has repeatedly cautioned that summary judgment should seldom be granted in the context of employment actions inasmuch as such actions are inherently fact based. See: *Chock v. Northwest Airlines Inc.*, 113 F.3d 861, 863 (8th Cir.1997); *Hardin v. Hussmann Corp.*, 45 F.3d 262, 264 (8th Cir.1995).

#### B. Title VII

The central issue in this proceeding is whether ADE discriminated against plaintiff in the assignment, allegedly, of job duties to her of an Administrative Assistant I position, while she was a Secretary II in Title I, and failed to classify her and compensate her as an Administrative Assistant I because of race. Stated differently, did ADE discriminate in the compensation between plaintiff and a white female who performed, allegedly, substantially the same job duties? Accordingly, resolving the issue raised by ADE's motion for summary judgment requires an analysis of the plaintiff's duties in comparison to those of the white female who was paid higher compensation.

The Civil Rights Act of 1964 (as amended), prohibits an employer from " to fail or

refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color . . . ." 42 U.S.C. § 2000e–2.

In order to establish a claim under Title VII, a plaintiff must show that he or she was intentionally discriminated against by the defendant based on race. *Floyd v. State of Missouri Department of Social, Services, Division of Family Services,* 188 F.3d 932 (8th Cir.1999). In a case which is not based on direct evidence of intentional discrimination, the plaintiff must rely on the order of proof set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). See also: *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *Hindman v. Transkrit Corporation,* 145 F.3d 986 (8th Cir. 1998).

Once the plaintiff establishes a prima facie case, the burden of production shifts to ADE "to articulate some legitimate, nondiscriminatory reason for [the employment decision]." If ADE satisfies its burden of production, plaintiff must show that the proffered reason is pretextual. At all times, plaintiff retains the burden of persuading the fact finder that intentional discrimination was the reason for the adverse employment decision. See: *Texas Dep't of Community Affairs v. Burdine,* supra; *McDonnell Douglas Corp. v. Green,* supra; *Rothmeier v. Investment Advisers, Inc.* 85 F.3d 1328, 1328 (8th Cir.1996).

The Court will now examine each of the steps in the burden shifting division in order to determine if plaintiff has established a viable cause of action. Stated differently, whether plaintiff has demonstrated that there is a genuine issue of material fact.

It is readily apparent that the parties do not dispute the fact that plaintiff has established the first element of her prima facie case; plaintiff is an African–American. In addition, the parties do not dispute that Linda Kanthak, a white female, was employed by ADE in 1988, when she began working as a Secretary I and was promoted to the position of Administrative Assistant I in 1992, and was classified as a Grade 15; and that Ms Kanthak never held the position of Secretary II.

█ The remaining elements the Court must consider, in determining whether plaintiff has demonstrated that there is a genuine issue of material fact for trial, are comparing the job duties performed by both plaintiff and Ms. Kanthak and ADE's argument that plaintiff did not possess the minimum qualifications for Administrative Assistant I position.

After close scrutiny of the job duties performed by plaintiff and Ms. Kanthak, as well as the announcement for Administrative Assistant I position, the Court is persuaded that plaintiff performed substantially the same job duties that Ms. Kanthak performed as Administrative Assistant I. Significantly, Ms. Kanthak testified in her deposition that given the fact that she performed, in essence, Administrative Assistant duties when she was classified as a Secretary I, she was not surprised that plaintiff as a Secretary II performed Administrative Assistant duties. See:*Di Salvo v. The Chamber of Commerce of Greater Kansas City,* 416 F.Supp. 844 ( W.D.Mo., 1976) ( stating that jobs are substantially equal if they require the same effort, skill and responsibility . . . . That plaintiff's male successor, who performed the same duties, was paid a higher salary than plaintiff is sufficient to prove discrimination in compensation because of sex.)

ADE's argument that inasmuch as plaintiff did not possess the posted minimum qualifications for the Administrative Assistant I position, plaintiff cannot establish a prima facie case is without merit. The evidence reflects that plaintiff's supervisors assigned the Administrative Assistant duties to plaintiff voluntarily and gave plaintiff a satisfactory evaluation for her job performance. This, indeed, creates an inference that plaintiff's supervisors waived the minimum qualification requirements. In addition, the following observation by the Supreme Court in *Griggs et al. v. Duke Power Co.*, 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158( 1971) is most instructive:

> The facts of this case demonstrate the inadequacy of broad and general testing devices as well as the infirmity of using diplomas or degrees as fixed measures of capability. History is filled with examples of men and women who rendered highly effective performance without the conventional badges of accomplishment in terms of certificates, diploma, or degrees. Diplomas and tests are useful servants, but Congress has mandated the commonsense proposition that they are not to become masters of reality.

See also: *Rogers v. Marsh*, 762 F.2d 73, 37 FEP 1347 (8th Cir.1985)( stating that employers's explanation for its failure to promote female employee—her failure to meet time-in-grade requirement—was pretext for sex discrimination amounts to finding that employee would have received promotion "but for" the discrimination against her).

[¶] ADE asserts further that plaintiff's supervisor was African–American; that plaintiff's supervisor reassigned job duties to plaintiff in order to meet the objectives of Title I's goals and to address the concerns that he had for plaintiff's performance. This Court is not persuaded that the mere fact that plaintiff's immediate supervisor is African–American is a firm defense to plaintiff's employment discrimination action. See: *Howard v. Roadway Express, Inc.*, 726 F.2d 1529 (11th Cir. 1984) ( stating that under Title VII, a racially balanced work force cannot immunize an employer from liability for specific acts of discrimination; that it is clear that Congress did not intend to given an employer license to discriminate against some employees on the basis of race or sex merely because he favorably treats other members of the employees' group). See also: *Castaneda v. Partida*, 430 U.S. 482, 97 S.Ct. 1272, 51 L.Ed.2d 498 (1977) ( stating that prima facie showing of discrimination against Mexican–Americans in county grand jury selection was not rebutted by showing that Mexican–Americans held governing majority of elective offices in county, in that it could not be presumed as a matter of law that human beings of one definable group will not discriminate against other members of their group).

In addition, plaintiff testified that she had received satisfactory evaluations from her supervisor regarding her job performances and that her supervisor had never mentioned any concerns he had about her job performance. Credibility is, indeed, a central issue in this Title VII claim.

The employment of Ms. Brumett, a white female, to assume duties of the Administrative Assistant I position and later reclassified as a Secretary II does not serve as a defense to plaintiff's claim of disparate treatment in the assignment of job duties given the fact that Ms. Brumett was not required to process annual financial reports as plaintiff was required to perform because such duties were reassigned to an accountant for the Title I program. This evidence creates an inference of pretext of ADE's alleged reasons asserted for not compensating and classi-

fying plaintiff as an Administrative Assistant I.

Accordingly, ADE's motion for summary judgment on the plaintiff's first claim for relief is denied inasmuch as the Court is persuaded that plaintiff has shown that there is a genuine issue of a material fact as to whether plaintiff's race was the reason that ADE did not compensate and classify plaintiff as an Administrative Assistant I.

## C. Hostile Work Environment

██ Plaintiff contends due to the fact that she filed several grievances with the State Grievance Committee and a complaint with the Equal Employment Commission, she was subjected to a hostile work environment. She testified that her supervisor, Arlen Jones, yelled at her after she filed her EEOC complaint; that Mr. Jones and Ms. Riggs turned the entire Title I staff against her; that the working environment became so intolerable, that she had to go home due to a severe headache; and that she met with Ms. Riggs on March 7, 2001 and was told to pack up her belongings because she was being moved out of Title I.

██ To establish a racially hostile work environment, plaintiff must demonstrate that the alleged conduct was "so intimidating, offensive, or hostile that it poisoned the work environment," creating an abusive situation. *Clark Co. Sch. Dis. v. Breeden*, 532 U.S. 268, 270, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001). See also: *Willis v. Henderson*, 262 F.3d 801, 809 (8th Cir. 2001).

The Court is not persuaded that plaintiff has offered sufficient evidence to establish a hostile work environment claim under Title VII, but only petty unpleasantness and annoyances to plaintiff, who characterized herself as a disgruntled employee.

Accordingly, ADE's motion for summary judgment on plaintiff's claim of hostile work environment is granted.

## D. Retaliation

██ On March 7, 2001, Ms. Riggs transferred plaintiff to the Office of Health Education, Safe and Drug Free Schools. At the time of the transfer, Ms. Riggs had no knowledge that plaintiff had filed state grievances or an EEOC complaint. The transfer was a lateral transfer and, accordingly, neither plaintiff's salary nor her classification as a Secretary II, Grade 13 changed.

██ In order to establish a prima facie case of retaliation, plaintiff must establish that she engaged in a statutorily protected activity; that she suffered an adverse employment action; and that a causal connection existed between the adverse employment action and the protected activity. *Kipp v. Missouri Highway and Transp. Comm'n*, 280 F.3d 893, 897 (8th Cir.1999).

The Court finds that plaintiff has failed to establish a prima facie case of retaliation and ADE's motion for summary judgment is granted.

## E. State Law Claim For Defamation

██ During her deposition, plaintiff gave the following testimony regarding her defamation claim:

A. I's—I'm saying that Ms. Riggs, that Linda and Marilyn Graham Engaged in defamation of character and slander.

. . . .

Q. What facts do you rely on to support your claim for defamation of Character?

A. You have a letter written by Jan-

inne Riggs to the Grievance Committee.[3]

. . . .

A. A letter. And there's an e-mail from one of her supervisors.

A. Okay. On March the 5th Ms. Riggs is saying she call Ms. Smith to inform her that Ms. Ausler (plaintiff) will begin work as scheduled, and at this time didn't even know I was going over there because I wasn't summoned to Ms. Riggs' office until March 7th.

Q. So this what you're basing your defamation of character?

A. Part of it. She said that she had heard, she had heard that the transfer would not occur. She stated that Ms. Ausler was telling others in the ADE that she had decided against the move. I called to meet with Ms. Ausler only to find she was on sick leave. After I was assigned to Health Education and Drug Free Schools, I was told that there was conversation about me coming over there and that I was a troublemaker. And I was—and I believe those statements were made.

The Court of Appeals for the Eighth Circuit made the following relevant observation in *Southern Council of Industrial Workers, et al., v. Jacqueline F. Ford, et al,* 83 F.3d 966 (8th Cir.1996):

In any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . . Supplemental jurisdiction exists over state-law claims where, as here, the federal-law claims and state-law claims in the case derive from a common nucleus of operative fact and re such that [Southern Council] would ordinarily be

expected to try them all in one judicial proceeding.

The Court, accordingly, finds that the Court does have subject matter jurisdiction over plaintiff's pendent state law claim of defamation inasmuch as the alleged defamation claim arise out of the same set of facts as her Title VII claim; and the defamation claim does not predominate or raise novel issues. See: *Vera–Lozano v. International Broadcasting,* 50 F.3d 67 (1st Cir.1995).

Under Arkansas law, the following elements must be proven to support a claim of defamation, whether it be the spoken word (slander) or the written word (libel): (1) the defamatory nature of the statement of fact; (2) that statement's identification of or reference to the plaintiff; (3) publication of the statement by the defendant; (4) the defendant's fault in the publication; (5) the statement's falsity; and (6) damages. See: *Brown v. Tucker,* 330 Ark. 435, 954 S.W.2d 262 (1997).

Inasmuch as plaintiff and ADE do not dispute that the communication that Ms. Riggs sent to the State Grievance Review Committee and supervisors, in response to a grievance filed by plaintiff, is the basis for plaintiff's defamation claim, the Court is not persuaded that plaintiff has established the publication element required under Arkansas law. The dissemination of Ms. Riggs' response was between officials within the ADE agency and not a publication to third persons. See: *Gumbhir v. Curators of The University of Missouri,* 157 F.3d 1141 (8th Cir.1998)( stating that communication between officers of the same corporate entity in the due and regular course of corporate business is not a publication to a third person). Accordingly, the Court will grant ADE's motion for

3. The Court has not been able to locate this communication which was referred to as "exhibit 43" by ADE's attorney during plaintiff's deposition.

summary judgment on plaintiff's defamation claim.