# United States Court of Appeals

### For the Eighth Circuit

_____

## No. 14-1016

_____

### Lt. LeRoy Hilde

*Plaintiff - Appellant*

v.

### City of Eveleth, a Minnesota political sub-division

*Defendant - Appellee*

------------------------------

### AARP

*Amicus on Behalf of Appellant*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: November 13, 2014
Filed: February 5, 2015

_____

Before MURPHY, MELLOY, and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

The City of Eveleth did not promote LeRoy Arthur Hilde to Chief of Police. Hilde—age 51 and retirement-eligible—claims that the City violated the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 623(a)(1), 631(a), and the Minnesota Human Rights Act (MHRA), Minn. Stat. § 363A.08, subd. 2. He appeals from summary judgment for the City. Having jurisdiction under 28 U.S.C. § 1291, this court reverses and remands.

I.

In January 2012, Chief of Police Brian Lillis announced his retirement. Hilde, on the force for 29 years, applied for the position. He was its only Lieutenant, the second-highest rank. A three-member commission controls hiring, promoting, discharging, and suspending the City police employees. **Minn. Stat. §§ 419.02**, **419.05**. The commissioners in 2012 were John Richard England, Mary Debevec, and Gary Skerjance. Between 1990 and 2012, the commission promoted internally, never seeking outside applications for vacancies. When one commissioner asked Chief Lillis whether any internal candidates met the minimum qualifications for his position, Lillis said that the three internal candidates were qualified but "one is not interested," referring to Hilde (Hilde denies telling anyone he was uninterested in the position). The commissioners, recruiting both internally and externally, selected four finalists, including Hilde and an external candidate, Detective Timothy Howard Koivunen.

Hilde had earned a high level of respect from Chief Lillis and the officers he supervised. The commissioners also agreed Hilde was an excellent Lieutenant. As Lieutenant, Hilde served as acting Police Chief when Lillis was unavailable. Hilde had an Associate's degree in law enforcement, and he had completed all continued training (though he did not enroll in leadership or management classes). Koivunen had served with the city of Virginia, Minnesota, for 18 years, reaching the rank of Detective. He had a Bachelor's degree in criminal law. Commissioner Debevec said that she personally chose Koivunen because his education included "some of the more

current schools." Lillis also noted Koivunen's more "contemporary training made him an appealing candidate to the [c]ommission."

The commission's protocol for hiring the Chief was to score three criteria: weighted years of service, training and employment, and an interview. Usually, each commissioner independently scored each candidate. The weighted-years-of-service score counted the candidate's actual years of police service with double credit for time as Sergeant and triple for Lieutenant. The City agrees that the weighted years of service could not be much higher than 65. The training-and-employment score was subjective, with a maximum of 20 points "awarded for specialized training, education or prior employment relevant to the job of Chief of Police." As for the interview points, the commissioners rated each candidate's appearance, greeting, presence, and closure on a scale of 1 to 5, and each candidate's answers to eight interview questions on a scale of 1 to 10. The maximum interview score was 100 points. The maximum total score for a finalist was about 185.

Before the interview, Hilde had a service score of 65—29 years of service, including 8 years as Sergeant and 14 years as Lieutenant—the highest of the finalists. He received 9 out of 20 on training-and-employment, the lowest of the finalists. Questioned about this score, neither the commissioners nor Lillis (who was involved in scoring) could explain how they arrived at it. Koivunen received a service score of 28—18 years of service, including 5 years as Detective, which the commission equated to Lieutenant. Koivunen scored 15 out of 20 for his training-and-employment, the highest of the finalists. The commissioners attributed this to his four-year degree and his participation as a Drug Abuse Resistance Education (D.A.R.E.) instructor at local schools. Before the interviews, Hilde led with a score of 74; Koivunen was second with 43 points.

After interviewing the candidates, the commissioners asked Lillis to leave the room while they deliberated (which he says was not typical). Before leaving, he told

them that Hilde was the right choice for the position and that should be "accurately reflected in the scores." Each commissioner gave Koivunen perfect 100 scores for his interview, a first according to Lillis. The commissioners claimed either to have no recollection of changing Koivunen's scores or to have independently reached these scores before deliberating. Hilde's interview sheets also reported identical scores between the commissioners for each component of his interview, totaling 69 points. Hilde and Koivunen thus each had 143 points after the interview, placing them in a tie for the position—also a first according to the commissioners and Lillis.

Two of the commissioners denied (or claimed not to remember) changing Hilde's scores, although markings on the scoring sheets were altered. Commissioner England stated in his deposition that they had "obviously" agreed on "leveling" Hilde's interview scores to reach a consensus.[1] The scores for the other two finalists varied greatly between the commissioners.

When Hilde applied, he was 51 years old. Koivunen was 43. A City officer with at least three years of service is retirement-eligible at 50. **Minn. Stat. § 353.01**, subd. 47(c)(1); **§ 353.651**. Hilde's age made him retirement-eligible. As Commissioner England said, "[W]e were all aware that he was eligible to retire at any point in time that he chose. He was eligible right then; he could have pulled the trigger at any time." Koivunen's age ensured he would not retire for another seven years.

---

[1]Q. So did you decide to coordinate your scoring of Hilde after you had already scored him separately once?
A. You mean each scored him separately? Yes, obviously.
Q. So did some judges change their scores for LeRoy Hilde?
A. Well, you had to. If three of us were going to agree, some came up, some came down, and we agreed on the score.
. . . .
Q. And as a consequence, he ended up tied with Tim Koivunen, correct?
A. Correct.

Chief Lillis believed that the commissioners were looking to hire "long-term," recalling, "Based on what I know about the whole—well, not only the process, but the things that were said after the process, I think that [Hilde's potential retirement date] probably did come into consideration." Hilde never told the commissioners he was seeking retirement or would not be committed to the position.[2] In a meeting with the unsuccessful candidates, Commissioner England said that Hilde's eligibility for retirement "might have" been a factor in the commission's decision.

Hilde sued the City, alleging he was passed over for the position on account of his age in violation of the ADEA and MHRA. The district court granted summary judgment to the City, finding Hilde failed to establish a prima facie case because Koivunen was only eight years younger, which was not "substantially younger." The court also ruled that Hilde failed to show the City's stated reasons for the decision were pretextual.

## II.

### A.

This court reviews de novo a grant of summary judgment, viewing the facts most favorably to the non-moving party with the benefit of all reasonable inferences. ***Torgerson v. City of Rochester***, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." ***Id.***

The ADEA and the MHRA prohibit age-based employment discrimination. *See* **29 U.S.C. § 631(a)(1)** (prohibiting employer from discriminating on age if employee

---

[2]Hilde had recently learned that if he retired, he would not receive full benefits for some time. He never disclosed this to the commissioners.

over 40); **Minn. Stat. § 363A.08**, subd. 2 (generally prohibiting age discrimination). This court analyzes the claims together under the three-step, burden-shifting test in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). ***Rahlf v. Mo-Tech Corp.***, 642 F.3d 633, 636 & n.2 (8th Cir. 2011). To establish age discrimination, a plaintiff must prove by the preponderance of the evidence that age was the but-for cause of the employment decision. ***Gross v. FBL Fin. Servs., Inc.***, 557 U.S. 167, 176 (2009) ("[T]he ordinary meaning of the ADEA's requirement that an employer took adverse action 'because of' age is that age was the 'reason' that the employer decided to act.").

By identifying direct evidence of discriminatory motive, a plaintiff overcomes summary judgment, foregoing the *McDonnell Douglas* analysis. ***Torgerson***, 643 F.3d at 1044. Direct evidence includes circumstantial evidence if the plaintiff shows "a specific link between a discriminatory bias and the adverse employment action, sufficient to support a finding by a reasonable fact-finder that the bias motivated the action." *Id*. at 1046. *See also* ***EEOC v. City of Independence***, 471 F.3d 891, 894 (8th Cir. 2006) ("To succeed on a disparate treatment claim, the plaintiff must show the employee's age 'actually played a role in [the employer's decisionmaking] process and had a determinative influence on the outcome.'" (alteration in original)), *quoting* ***Reeves v. Sanderson Plumbing Prods., Inc.***, 530 U.S. 133, 141 (2000).

"But if the plaintiff lacks evidence that clearly points to the presence of an illegal motive, he must avoid summary judgment by creating the requisite inference of unlawful discrimination through the *McDonnell Douglas* analysis, including sufficient evidence of pretext." ***Torgerson***, 643 F.3d at 1044. Under *McDonnell Douglas*, an employee first establishes a prima facie case of discrimination. ***McDonnell Douglas***, 411 U.S. at 802. The burden of production then shifts to the employer to "articulate some legitimate, nondiscriminatory reason for the employee's rejection." ***Id.*** *See also* ***Torgerson***, 643 F.3d at 1047 ("The burden to articulate a nondiscriminatory justification is not onerous, and the explanation need not be demonstrated by a preponderance of the evidence."). If the employer offers such a

reason, the burden shifts back to the plaintiff to evidence that the employer's proffered explanation is pretext for unlawful discrimination. *McDonnell Douglas*, 411 U.S. at 804. A plaintiff provides sufficient evidence of pretext by showing that "the employer's explanation is unworthy of credence . . . because it has no basis in fact . . . . [or] by persuading the court that a [prohibited] reason more likely motivated the employer." *Torgerson*, 643 F.3d at 1047 (second alteration in original). *See also Reeves*, 530 U.S. at 143 (plaintiff overcomes summary judgment by showing employer's proffered explanation is unworthy of credence). "At all times, the plaintiff retains the burden of persuasion to prove that age was the 'but-for' cause of the termination." *Rahlf*, 642 F.3d at 637, *citing Gross*, 557 U.S. at 176-77.

B.

Here, the commissioners did not directly reference Hilde's age in their hiring process. Because Hilde fails to show a "specific link" to age discrimination, the *McDonnell Douglas* analysis applies. *See Torgerson*, 643 F.3d at 1046.

The parties agree that Hilde satisfies the first three prima facie elements: he was (1) over 40 at the time of the challenged decision, (2) not hired (or promoted), and (3) qualified for the job. *Tusing v. Des Moines Indep. Cmty. Sch. Dist.*, 639 F.3d 507, 515 (8th Cir. 2011) (fourth element whether employer hired younger person to fill position). They dispute whether age was a factor in the City's decision. When an employer offers reasons why age was not a but-for factor in its decision, this court may move to the next steps in *McDonnell Douglas*: whether the proffered reason is legitimate and nondiscriminatory, or whether it is pretext for unlawful discrimination. *Steward v. Indep. Sch. Dist. No. 196*, 481 F.3d 1034, 1043 (8th Cir. 2007) ("[I]f an employer has articulated a legitimate reason for its actions, it is permissible for courts to presume the existence of a prima facie case and move directly to the issue of pretext."). *See also U.S. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 715 (1983) ("The *prima facie* case method established in *McDonnell Douglas* was never

intended to be rigid, mechanized, or ritualistic," and "[w]here the defendant has done everything that would be required of him if the plaintiff had properly made out a prima facie case, whether the plaintiff really did so is no longer relevant." (internal quotation marks omitted)).

1.

First, the City argues that Hilde's retirement eligibility was wholly unrelated to age. This issue is whether the commissioners viewed Hilde's retirement eligibility as wholly independent from his age, or whether they used retirement eligibility as a proxy for age in order to discriminate against him. *See Hazen Paper Co. v. Biggins*, 507 U.S. 604, 612-13 (1993) (defining a proxy for age as a situation where employer targets employees eligible for pension on assumption that they are older). Hilde was eligible for retirement because he was over 50. The commissioners were aware of his eligibility, they were looking for someone to fill the position "long-term," and Commissioner England told the unsuccessful finalists that Hilde's eligibility to retire "might have" played a role in the commission's decision. The City does not deny that the commissioners considered Hilde's retirement in reaching a decision; it argues that retirement eligibility is evidence of an employee's lack of commitment to a job, a legitimate concern.

The district court concluded that "it is not improper for an employer to consider a candidate's eligibility for retirement when making a hiring decision." *Hilde v. City of Eveleth*, 986 F. Supp. 2d 1068, 1076 (D. Minn. 2013), *citing Hazen Paper*, 507 U.S. at 611. In *Hazen Paper*, the Court found the plaintiff's years of service, distinct from age, triggered pension benefits. *Hazen Paper*, 507 U.S. at 608, 613 (employer does not necessarily violate ADEA by making employment decisions based on pension benefits that vest solely based on years of service and not age, even though the two factors are "empirically correlated" and employer could "take account of one while ignoring the other").

> [A]s a matter of pure logic, age and pension status remain "analytically distinct" concepts. That is to say, one can easily conceive of decisions that are actually made "because of" pension status and not age, even where pension status is itself based on age.

***Kentucky Ret. Sys. v. EEOC***, 554 U.S. 135, 143 (2008), *quoting **Hazen Paper***, 507 U.S. at 611.

One purpose of the ADEA is to ensure candidates are evaluated "'on their merits and not their age.'" ***Hazen Paper***, 507 U.S. at 610-11 ("Congress' promulgation of the ADEA was prompted by its concern that older workers were being deprived of employment on the basis of inaccurate and stigmatizing stereotypes."), *quoting **Western Air Lines, Inc. v. Criswell***, 472 U.S. 400, 422 (1985). "When the employer's decision *is* wholly motivated by factors other than age, the problem of inaccurate and stigmatizing stereotypes disappears." ***Hazen Paper***, 507 U.S. at 611. To illustrate, the Court stated:

> An employee who is younger than 40, and therefore outside the class of older workers as defined by the ADEA, see 29 U.S.C. § 631(a), may have worked for a particular employer his entire career, while an older worker may have been newly hired. Because age and years of service are analytically distinct, an employer can take account of one while ignoring the other, and thus it is incorrect to say that a decision based on years of service is necessarily "age based."

> . . . The prohibited stereotype ("Older employees are likely to be ___") would not have figured in this decision, and the attendant stigma would not ensue. The decision would not be the result of an inaccurate and denigrating generalization about age, but would rather represent an *accurate* judgment about the employee—that he indeed is "close to vesting."

*Id.* at 611-12. The Court, however, distinguished this from special cases where an employer uses pension status, or some other criteria, as a proxy for age. *Id.* at 612-13 ("Nor do we rule out the possibility of . . . liability under . . . the ADEA where the decision to fire the employee was motivated both by the employee's age and by his pension status."). Such a special case occurs where an employer actually uses a particular event (i.e. retirement eligibility) in making a hiring decision and that event in turn occurs because the person has attained a protected age. *See **Erie Cnty. Retirees Ass'n v. Cnty. of Erie***, 220 F.3d 193, 211 (3d Cir. 2000) (finding Medicare eligibility a proxy for age because it requires employee be 65 and have 10 years of work). In this case, because Hilde had long had 3 years of service, his age was not analytically distinct from his retirement eligibility.

Generally, "employment decisions motivated by factors other than age (such as retirement eligibility, salary, or seniority), even when such factors correlate with age, do not constitute age discrimination." ***Cooney v. Union Pac. R.R. Co.***, 258 F.3d 731, 735 (8th Cir. 2001), *quoting **EEOC v. McDonnell Douglas Corp.***, 191 F.3d 948, 951 (8th Cir. 1999). *See also **Scott v. Potter***, 182 Fed. Appx. 521, 526 (6th Cir. 2006) (unpublished) ("In short, 'retire' and 'age' are not synonyms."). However, this is true only if these factors, although usually correlated, are wholly independent from age. *See **City of Independence***, 471 F.3d at 896 ("The city and the district court ignore that the 'correlated' language in *Hazen* applies only where the employer's decision is 'wholly' motivated by factors other than age. The key is what the employer supposes about age."). On the facts here, retirement eligibility is always correlated with age because it is dependent on the employee reaching 50; it cannot be "divorced from age." *See **Tramp v. Associated Underwriters, Inc.***, 768 F.3d 793, 802 (8th Cir. 2014) ("insurance premiums are not divorced from age" where employer "presumed the rise in one necessitated a rise in the other").

To assume that Hilde was uncommited to a position because his age made him retirement-eligible is age-stereotyping that the ADEA prohibits. *See **Hazen Paper**,*

507 U.S. at 610-11 ("It is the very essence of age discrimination for an older employee to be fired because the employer believes that productivity and competence decline with old age."). The prohibited stereotype—older employees are likely to be less committed to a job because they can retire at any time—figured in the City's decision. *See id.* at 612. Using retirement eligibility to presuppose lowered productivity or dedication would not "represent an *accurate* judgment about the employee" unless evidence other than age indicates that the employee would, in fact, retire. *Id.* at 612. *See also Lee v. Rheem Mfg. Co.*, 432 F.3d 849, 853-54 (8th Cir. 2005) (finding that employer's questions and concerns about job commitment were not discriminatory because candidate had come out of retirement and stated during interviews that he was only interested in earning short-term money).

The City provides no evidence that the commissioners doubted Hilde's commitment to the job for any reason but for his age-based retirement eligiblity. They admit he had a great reputation in the force and they held his continued service in the highest regard. The City argues that Hilde should have convinced them that though retirement eligible, he would not retire. According to Commissioner England:

> I would have appreciated something out of [Hilde], some indication that he wanted this job and was willing to commit for at least some period of time. By not telling us anything, now you're thinking in your mind, what's this guy thinking, what's he doing. If he gets the Chief's job, he's just going to take it and that's going to be a feather in his hat and he's going to pull the trigger and retire? I would have liked some commitment out of the guy.

The commissioners apparently never asked about his commitment to the job or whether he was considering retirement. The City has not met its burden of articulating a nondiscriminatory justification for its reliance on Hilde's retirement eligibility. "This is not to say that discrimination occurred here, but that summary judgment prematurely disposed of the issue." *Tramp*, 768 F.3d at 802.

-11-

2.

Alternatively, the City asserts as a legitimate, nondiscriminatory reason that, retirement eligibility aside, Koivunen was simply "the most qualified candidate for the position." Where an employer claims that "the selected candidate was more qualified for the position than the plaintiff, a comparative analysis of the qualification is relevant to determine whether there is reason to disbelieve the employer's proffered reason for its employment decision." *Torgerson*, 643 F.3d at 1048. If the candidates were "evaluated on an objective performance scale by a uniformly applied process, the subjectivity of some component cannot in and of itself prove pretext or discriminatory intent." *Id.* at 1049-50.

The City claims Koivunen was the "obviously superior candidate," but this is refuted by its rankings of Koivunen and Hilde as tied. When asked why "superior candidate" Koivunen's scores were not higher than Hilde's, Commissioner England stated, "I don't know. I can't answer that." Before the interviews, Hilde was the most qualified candidate with more than double Koivunen's score. The commissioners altered Hilde's interview scores during deliberations, "leveling" the two candidates. An "employer's failure to follow its own policies may support an inference of pretext" when the departure affects only the affected candidate. *Floyd v. Missouri Dep't of Soc. Servs., Div. of Family Servs.*, 188 F.3d 932, 937 (8th Cir. 1999). Hilde was the only finalist to have his scores changed. Unlike the interviewers in *Torgerson*, the commissioners here did not use a "uniformly applied process" and were unable to clearly and specifically explain Hilde's unreasonably low and altered scores. *See Torgerson*, 643 F.3d at 1049-50 (granting summary judgment where interviewers were "able to explain, in clear and reasonably specific terms, their reasons for scoring"); *Widoe v. Dist. No. 111 Otoe Cnty. Sch.*, 147 F.3d 726, 730-31 (8th Cir. 1998) (denying summary judgment for employer where plaintiff submitted evidence that selection committee found her recommendations to be old and her education to

be outdated, though the successful candidate "impressed every member of the selection team with her credentials, experiences and her interview").

True, an employer's subjective choice between two candidates with "similar qualifications" does not itself imply discrimination. *See Torgerson*, 643 F.3d at 1049-50. In this case, there is more: the commissioners did not follow their hiring protocol. They deliberately manipulated Hilde's scores to ensure the candidates would be "similarly qualified," calling into question the objectivity of the entire hiring process. *See Floyd*, 188 F.3d at 937; *McKay v. U.S. Dep't of Transp.*, 340 F.3d 695, 700 (8th Cir. 2003) (probative evidence that the interview process was a sham may be used in considering whether reasoning is pretext for discrimination); *Dunlap v. TVA*, 519 F.3d 626, 632 (6th Cir. 2008) ("[T]here was ample evidence supporting the district court's finding of pretext, including the contravention of TVA rules on conducting interviews and measuring candidate merit, and the ultimate manipulation of the matrix scores.")

Additionally, before the interviews, the commissioners ranked Hilde's training-and-employment score (based on "relevant experience") lowest of all candidates without explanation—although his years-of-experience score was the highest. There was no overall objective disparity between Hilde and Koivunen's qualifications (although Koivunen had fewer years of experience) to support the City's argument that Koivunen's credentials were "obviously" superior. Hilde's extremely low training-and-employment score, without justification, is further evidence of pretext when compared to the higher scores of other finalists with less training and experience. Thus, Hilde has met his burden of showing the City's reasoning—that Koivunen was the most qualified candidate—may be pretext for discrimination.

The district court held that the eight-year age gap between Hilde and Koivunen "dooms" Hilde's case, finding Koivunen was not "substantially younger." *Hilde*, 986 F. Supp. 2d at 1075. This court has assumed without deciding that even a six-year gap

-13-

is substantial. ***Hammer v. Ashcroft***, 383 F.3d 722, 726 (8th Cir. 2004) ("We assume, arguendo, that the six-year age difference . . . was sufficient to support a prima facie case."). *But see* ***Girten v. McRentals, Inc.***, 337 F.3d 979, 982 (8th Cir. 2003) (doubting whether nine-year gap is "sufficient to infer age discrimination"). Here, the commissioners thought Hilde was retirement-eligible because of his age. They also thought Koivunen would stay in the position for at least seven years before he could retire. Therefore, the age difference was substantial in this case.

The City is "certainly entitled to rely at trial on evidence that its employment decision was based upon legitimate subjective criteria and subjective impressions that were free of any discriminatory animus." ***Widoe***, 147 F.3d at 730. Here, there are genuine issues of material fact whether the City discriminated against Hilde because of his age.

\* \* \* \* \* \* \*

Summary judgment is reversed, and the case remanded to the district court for proceedings consistent with this opinion.

_____