SHEPHERD, Circuit Judge,
dissenting.
I respectfully dissent from the majority’s reversal of the district court. Smith has failed to establish a prima facie case for discrimination because he has not demonstrated that he suffered an adverse employment action, nor do the circumstances give rise to an inference of discrimination from URS’s treatment of Smith as compared to Griffin.
Smith received the position for which he applied, and he received a salary which was over $10,000 per year more than he requested. He therefore suffered no adverse employment action in the hiring process. He did not apply for a higher position, nor did URS hire Griffin over Smith. Griffin applied for his job five months after Smith, and Griffin indicated on his employment application that he expected a salary of $65,000, which is the salary of the S5.13 grade position for which Griffin was ultimately hired. Thus, the majority penalizes URS for hiring Griffin at the salary he requested and hiring Smith at more than $10,000 over the salary which he sought. Upon these undisputed facts, no reasonable jury could find that URS unlawfully discriminated against Smith in the hiring process.
Smith also points to the denial of his request for a raise and his early termi *973 nation date as adverse employment actions. We have held that a decision not to raise an employee’s salary does not constitute an adverse employment action where the employee’s salary is not decreased or otherwise diminished in any way. Tademe v. Saint Cloud State Univ., 328 F.3d 982, 992 (8th Cir.2003). Therefore, Smith’s contention that the denial of his request for a raise constitutes an adverse employment action is without merit. Smith’s salary was never decreased nor diminished. In fact, it is undisputed that Smith’s salary was significantly higher than the salary he requested in his job application.
As for Smith’s early termination date, when URS began closing down its operations in 2010, it created a destaffing process whereby employees completed tests and were assigned termination dates based on their scores. Griffin scored the highest of all training specialists, while Smith scored the lowest. Consequently, Smith was one of the first employees URS released. Smith makes bare allegations that the test itself was discriminatory, but he provides no evidence that gives credence to this assertion. Smith’s low test score provides a legitimate, non-diseriminatory reason for his early termination date as compared to Griffin. Moreover, at the time of Smith’s hire, URS informed him, as it did all of its employees, that the company had a fixed contract with the government and that it would cease operations upon completion of the contract. Ultimately, URS laid off all of its employees, and the facility is no longer in operation.
Even if Smith could show an adverse employment action, Smith has not shown that the circumstances give rise to an inference of discrimination. “Although evidence of pretext is normally considered at the last step of the McDonnell Douglas analysis, pretext can also satisfy the inference-of-discrimination element of the pri-ma-facie case.” Young v. Builders Steel Co., 754 F.3d 573, 578 (8th Cir.2014) (citing Lake, 596 F.3d at 874). At the inference-of-discrimination stage, a plaintiff may show pretext by demonstrating that the employer treated similarly-situated employees in a disparate manner, as Smith attempts to do here. Lake, 596 F.3d at 874. Smith argues that he was similarly situated to Griffin in all relevant respects; however, the evidence indicates that URS believed Griffin had more classroom and management experience, and was thus better suited to handle a larger range of classes than Smith. While a plaintiff does not have to prove his relative qualifications to meet his prima facie burden, he does have to show that he is similarly situated. We have held that two co-workers were not similarly situated when one co-worker was unable to perform the job responsibilities of the other. See Young, 754 F.3d at 578. Here, Smith has presented scant evidence that he could have handled as large a range of classes as Griffin. Therefore, in one highly relevant respect, Smith has failed to meet his burden to demonstrate that he is similarly situated to Griffin.
The majority devotes much of its opinion to scrutinizing the nondiscriminatory justifications articulated by URS. Yet, URS’s burden is “not onerous, and the explanation need not be demonstrated by a preponderance of the evidence.” Torgerson, 643 F.3d at 1047 (quoting Floyd v. State of Mo. Dep’t of Soc. Servs., Div. of Family Servs., 188 F.3d 932, 936 (8th Cir.1999)). URS has consistently maintained that Griffin asked for a higher salary and was more qualified than Smith. “Where ... the employer contends that the selected candidate was more qualified for the position than the plaintiff, a comparative analysis of the qualifications is relevant to determine whether there is reason to disbelieve the employer’s proffered reason for its employment decision.” Torgerson, 643 F.3d at 1048 (citation omitted). We have *974 determined that “[i]f the comparison ‘reveals that the plaintiff was only similarly situated or not as qualified as the selected candidate,’ then no inference of ... discrimination would arise.” Id. at 1049 (quoting Wingate v. Gage Cnty. Sch. Dist., 528 F.3d 1074, 1080 (8th Cir.2008)). At most, Plaintiff has shown that his qualifications are similar to Griffin. Therefore, Smith’s disparate treatment claim must fail.
With regard to Smith’s retaliation claim, Smith claims that URS retaliated against him for questioning his S5.12 status, however, Smith first complained to his supervisors about his treatment in 2009 and he was not laid off until 2011. Moreover, URS articulated a non-retaliatory reason for Smith’s termination: he scored the lowest on the destaffing tests. Further, at the time URS hired Smith, URS informed him that the facility would shut down at some point in the foreseeable future. URS eventually laid off every employee, and the order of termination was assigned by test score, with the lowest-scoring employees receiving the earliest termination dates. Given these facts, Smith has not demonstrated that URS retaliated against him for complaining about his S5.12 position.
Accordingly, I would affirm the district court’s grant of summary judgment in favor of URS.