# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-1113

_____

| | |
|---|---|
| Richard Rahlf, Frank Stelter, & Scott Johnson, | * * * |
| Plaintiff - Appellant, | * * |
| v. | * Appeal from the United States * District Court for the * District of Minnesota. |
| Mo-Tech Corp., Inc., | * * |
| Defendant - Appellee. | * |

_____

Submitted: November 16, 2010
Filed: June 16, 2011

_____

Before SMITH, BEAM, and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

In October 2007, Richard S. Rahlf, Frank Stelter and Scott W. Johnson were terminated by their employer, Mo-Tech Corporation. They sued for age discrimination in violation of the Age Discrimination in Employment Act (ADEA) and the Minnesota Human Rights Act (MHRA). The district court[1] granted summary judgment to Mo-Tech. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

_____

[1] The Honorable David S. Doty, United States District Judge for the District of Minnesota.

Mo-Tech, a privately-held corporation, manufactures molds for the automotive, medical, consumer-products, and computer industries. Before Rahlf, Stelter and Johnson were laid off, Mo-Tech employed 14 mold-makers, classified by skill level. Rahlf, Stelter and Johnson were Class A manual mold-makers, the most skilled. Class A manual mold-makers build, restore, alter and service complex molds.

In the 1980s, when Rahlf, Stelter and Johnson began working, molds were made manually. Mold-makers then read a two-dimensional blueprint from which they produced the finished, three-dimensional mold. In the early 1990s, Mo-Tech began using a Computer Numerical Control machine (CNC) to help make the molds. A CNC machine is programmed by a mold-maker to the product specifications and directs the production of the mold. The CNC technology makes the process easier and faster.

The popularity of CNC technology has steadily increased. Clients often design parts for CNC-generated models. Consequently, there is greater need for mold-makers proficient in this technology as opposed to traditional manual mold-making. Despite the growing popularity of CNC, Mo-Tech did not require or provide its employees with formal training on it. Instead, employees were trained on the job when CNC machines were available. Rahlf practiced on the CNC machines at work; Stelter and Johnson each attended CNC training in the 1990s.

Mo-Tech's employees are managed by Thomas J. Nielsen, the President; Thomas Pickar, the Operations Manager; and Timothy E. Pickar, the Tooling Manager. In September 2007, these three determined that a reduction-in-force (RIF) was necessary, due to a change in client needs, as well as anticipated reductions in workload and profitability. To determine which mold-makers to let go, Nielsen, Pickar and Pickar ranked the mold-makers based on several factors, including CNC proficiency, general mold-making efficiency, and their own observations of each

employee's work. The three managers agreed that Rahlf, Stelter and Johnson should be laid off.

The three employees contend they were terminated because of their age, in violation of the ADEA and MHRA. The district court granted summary judgment to Mo-Tech. Rahlf, Stelter and Johnson appeal.

II.

This court reviews de novo a grant of summary judgment. *See* **EEOC v. Liberal R-II Sch. Dist.**, 314 F.3d 920, 922 (8th Cir. 2002). Summary judgment is appropriate when the evidence, viewed most favorably for the nonmovant, demonstrates no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *See* **Cherry v. Ritenour Sch. Dist.**, 361 F.3d 474, 478 (8th Cir. 2004). "A genuine issue of material fact exists if a reasonable jury could return a verdict for the party opposing the motion." **Humphries v. Pulaski County Special Sch. Dist.**, 580 F.3d 688, 692 (8th Cir. 2009).

The ADEA prohibits discrimination against employees, age 40 and over, because of their age.[2] **29 U.S.C. § 623(a)(1), 631(a)**. Under the ADEA, a plaintiff may prove age discrimination based on disparate treatment. When, as here, a plaintiff relies on circumstantial rather than direct evidence of age discrimination, the case is considered under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See* **Tusing v. Des Moines Indep. Cmty. Sch. Dist.**, 639

---

[2] Like the ADEA, the MHRA prohibits discrimination against an employee based on age. "In analyzing cases under the MHRA, the state courts apply the principles developed in the adjudication of claims under Title VII because of the substantial similarities between the two statutes." **Hanenburg v. Principal Mut. Life Ins. Co.**, 118 F.3d 570, 574 (8th Cir. 1997). This court thus analyzes the claims together, applying the same evidentiary framework.

F.3d 507, 515 (8th Cir. 2011) (upholding the continued applicability of *McDonnell Douglas* after *Gross v. FBL Fin. Servs., Inc.*, ___ U.S. ___, 129 S.Ct. 2343, 174 L.Ed. 2d. 119 (2009)); **Haigh v. Gelita USA, Inc.**, 632 F.3d 464, 468 (8th Cir. 2011) (applying *McDonnell Douglas*, after *Gross*, in ADEA claim based on circumstantial evidence). Under this framework, the plaintiff must first establish a four-part prima facie case of age discrimination. *See* **Chambers v. Metro. Prop. & Cas. Ins. Co.**, 351 F.3d 848, 855 (8th Cir. 2003). To establish a prima facie case of age discrimination in a reduction-in-force, a plaintiff must show that (1) he is over 40 years old, (2) he met the applicable job qualifications, (3) he suffered an adverse employment action, and (4) there is some additional evidence that age was a factor in the employer's termination decision. *See* **Ward v. Int'l Paper Co.**, 509 F.3d 457, 460 (8th Cir. 2007). Once the plaintiff establishes a prima facie case, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for its adverse employment action. *Id*. If the employer does so, the plaintiff must show that the employer's proffered reason was pretext for discrimination. *Id*. At all times, the plaintiff retains the burden of persuasion to prove that age was the "but-for" cause of the termination. *See* **Gross v. FBL Fin. Servs., Inc.**, ___U.S. at ___ 129 S.Ct. at 2350.

The first and third elements of a prima facie case are undisputed: Rahlf, Stelter and Johnson were over forty and were laid off. Mo-Tech also does not contest that Stelter and Johnson satisfy the second element: both were qualified for a position at the company after the RIF. Mo-Tech does, however, argue that Rahlf was not qualified for any position existing after the RIF because he was not skilled with CNC technology. As summary judgment mandates making all inferences for the non-moving party, and because Rahlf offers some evidence that there was still work for manual mold-makers, Rahlf satisfies the second element of the prima facie case. *See* **Arnold v. Nursing Home & Rehab. Ctr. at Good Shepherd LLC**, 471 F.3d 843, 846 (8th Cir. 2006) (finding that employees were required to show only that they were qualified for the job, not that they would excel or even meet reasonable expectations).

-4-

Rahlf, Stelter and Johnson claim that because they were the oldest full-time mold-makers terminated, age was a factor in terminating them. Without direct evidence of age discrimination, Rahlf, Stelter and Johnson may satisfy their burden "by presenting either statistical evidence (such as a pattern of forced early retirement or failure to promote older employees) or 'circumstantial' evidence (such as comments and practices that suggest a preference for younger employees.)" *Chambers*, 351 F.3d at 856, *quoting **Hanebrink v. Brown Shoe Co.***, 110 F.3d 644, 646 (8th Cir. 1997).

Before Rahlf, Stelter and Johnson's termination, Mo-Tech employed eleven Class A mold-makers. Rahlf, Stelter and Johnson (and one other employee not party to this suit) were the only Class A mold-makers terminated, and were the oldest full-time Class A mold-makers. Though not determinative of age discrimination, this fact is sufficient to make a prima facie case. *See **Lewis v. Aerospace Cmty. Credit Union***, 114 F.3d 745, 748 (8th Cir. 1997) (plaintiff proved a prima facie case by showing that all three management employees over the age of 50 were fired, raising "some suspicion as to [employer's] motives in implementing its reduction in force"). With a prima facie case established, this court examines whether Mo-Tech has proffered a legitimate, non-discriminatory reason for the layoffs.

Mo-Tech explains that the RIF was necessary because of shifting (and reduced) customer needs as well as concerns about continued profitability. The company's stated goal "was to shift the work that remained to the more efficient and less labor intensive CNC mold making process while reducing the total number of Class A manual mold makers employed to reflect the anticipated decrease in its workload." This is a legitimate, nondiscriminatory justification for Rahlf, Stelter and Johnson's termination. *See **Floyd v. Mo. Dep't of Social Servs., Div. of Family Servs.***, 188 F.3d 932, 936 (8th Cir. 1999) ("The burden to articulate a nondiscriminatory justification is not onerous, and the explanation need not be

demonstrated by a preponderance of the evidence."). Rahlf, Stelter and Johnson must then show that Mo-Tech's explanation is pretextual, meant to conceal the real, discriminatory reason for their terminations.

"When an employer articulates a nondiscriminatory reason for an employee's discharge . . . 'the factual inquiry proceeds to a new level of specificity.'" ***Dammen v. UniMed Med. Ctr.***, 236 F.3d 978, 981 (8th Cir. 2001), *quoting* ***USPS Bd. of Governors v. Aikens***, 460 U.S. 711, 715 (8th Cir. 2001). To avoid summary judgment, Rahlf, Stelter and Johnson must "present evidence that creates a question of material fact as to whether [Mo-Tech's] proffered reason is pretextual and that creates a reasonable inference that age was a determinative factor in [the] decision to discharge them." ***Regel v. K-Mart Corp.***, 190 F.3d 876, 879 (8th Cir. 1999); *see also* ***Lewis v. St. Cloud State Univ.***, 467 F.3d 1133, 1137 (8th Cir. 2006).

Rahlf, Stelter and Johnson claim Mo-Tech's stated reason is pretextual on five grounds: (1) there was no need for a RIF; (2) Mo-Tech failed to review their performance evaluations; (3) Mo-Tech did not follow its own termination criteria; (4) Mo-Tech destroyed the evidence relied upon to make the decision; and (5) Mo-Tech changed its reasons for the termination.

Rahlf, Stelter and Johnson argue that a RIF was not necessary. They point out that within a year after they were fired, Mo-Tech hired new employees and its sales increased. True, Mo-Tech did hire five new employees after Rahlf, Stelter and Johnson were laid off. None of the new employees, however, were Class A mold-makers (the position previously held by the three men). Instead, the new employees filled positions that required either significantly less skill or CNC-specific skills. Mo-Tech hired one part-time shop assistant (who was replaced shortly after starting work), one Class B CNC machinist, one part-time Class D CNC machinist, and rehired one employee as a Class B CNC machinist. Contrary to Rahlf, Stelter and Johnson's assertion, the fact that the remaining mold-makers were busy and that Mo-

Tech's sales increased after they were terminated does not support an inference that the RIF itself was pretextual. "[W]hen a company exercises its business judgment in deciding to reduce its work force, 'it need not provide evidence of financial distress to make it a 'legitimate' RIF.'" *Regel*, 190 F.3d at 880, *quoting **Hardin v. Hussmann Corp.***, 45 F.3d 262, 265 (8th Cir. 1995).[3]

Next, Rahlf, Stelter and Johnson attack the methods Mo-Tech used to determine which employees to terminate. They assert a failure to review performance evaluations, failure to follow the employee handbook criteria, and destruction of the evidence supporting the termination decision.

"In the past, [this court has] looked to an employer's method of determining which employees to discharge for evidence of possible discriminatory intent." ***Hardin v. Hussmann Corp.***, 45 F.3d 262, 266 (8th Cir. 1995). Rahlf, Stelter and Johnson contend that Mo-Tech failed to use objective criteria when ranking the mold-makers and impermissibly ignored their positive performance reviews. Ranking the manual mold-makers, Nielsen, Pickar and Pickar examined both objective data and subjective observations. They reviewed all the mold-makers' skills with CNC technology. Each mold-maker's productivity and profitability were objectively measured by reviewing whether the hours budgeted for particular jobs were met or exceeded. Relying further on objective criteria, Nielson, Pickar and Pickar consulted a computer program, "Job BOSS," that assesses employee performance. Personal

---

[3] Rahlf, Stelter and Johnson argue that increasing sales allow the inference that a RIF was pretextual, citing ***Hillebrand v. M-Tron Indus., Inc.***, 827 F.2d 363 (8th Cir.), *cert. denied*, 488 U.S. 1004 (1989) and ***Gaworski v. ITT Comm. Fin. Corp.***, 17 F.3d 1104 (8th Cir.), *cert. denied*, 513 U.S. 946 (1994). While both cases note that RIF plans "often include objective evidence of a business decline," both cases also include many other indicators that the RIF was pretextual. ***Gaworski***, 17 F.3d at 1109, *quoting **Hillebrand***, 827 F.2d at 367. *Hillebrand* and *Gaworski* do not hold that evidence of a company's increasing sales after an RIF require an inference of pretext.

knowledge of each mold-maker also factored into the layoff decisions. Given the small number of Class A mold-makers (11) and management's close involvement with daily operations, subjective knowledge of each man's work and skills was relevant to the ultimate termination decision. *See* ***Wingate v. Gage County Sch. Dist.***, 528 F.3d 1074, 1080 (8th Cir. 2008) (rejecting an inference of discrimination where employer did not rely exclusively on subjective criteria, but also considered objective criteria). And, contrary to Rahlf, Stelter and Johnson's position, Mo-Tech was not required to base its RIF decision on positive performance reviews. *See* ***Hutson v. McDonnell Douglas Corp.***, 63 F.3d 771, 779 (8th Cir. 1995) (finding that high performance ratings were unconvincing circumstantial evidence of discrimination in second RIF because all employees could be considered competent).

Rahlf, Stelter and Johnson further allege that Mo-Tech did not follow its own employee handbook, which outlines criteria for termination decisions. "An employer's failure to follow its own policies may support an inference of pretext." ***Floyd***, 188 F.3d at 937. Mo-Tech's employee handbook states that "we keep people at work who have the skills and training to do the required jobs by area. We look at quality, productivity, attendance, efficient use of time and length of service to make our selections." Rahlf, Stelter and Johnson claim that Mo-Tech's failure to consider length of service deviates from its own policies sufficiently to show pretext. This is not so. The testimony of Tom and Tim Pickar demonstrates that they examined Rahlf, Stelter and Johnson's performance for many of the listed criteria, albeit giving differing weight to the importance of each. Additional factors, not included in the handbook, were also considered, which is appropriate given the nature of the RIF.

Rahlf, Stelter and Johnson claim that Mo-Tech's destruction of the rankings and other supporting evidence demonstrates pretext. True, Mo-Tech discarded the specific rankings used to make its decision. However, the objective data used was easily accessible or reproducible, and the managers testified how they reached their ultimate decision. There is no indication that the evidence was destroyed in an

attempt to conceal the truth. *Cf.* ***Stevenson v. Union Pac. R.R. Co.***, 354 F.3d 739, 746 (8th Cir. 2004) (in a negligence suit, adverse-inference jury instruction was appropriate where defendant intentionally destroyed relevant documents and recordings).

Finally, Rahlf, Stelter and Johnson assert that Mo-Tech provided inconsistent rationales for its termination decision, which could permit a fact finder to find pretext. "Pretext may be shown with evidence that the employer's reason for the termination has changed substantially over time." ***Loeb v. Best Buy Co., Inc.***, 537 F.3d 867, 873 (8th Cir. 2008). Rahlf, Stelter and Johnson cite numerous cases where inconsistent explanations for an employment decision were evidence of pretext. They, however, do not direct this court to inconsistencies in Mo-Tech's proffered reasons for their termination. They claim that for the first time on appeal, Mo-Tech raises specific, performance-related issues about each man. Mo-Tech has never stated that Rahlf, Stelter and Johnson were terminated solely (or even primarily) for performance-related issues. As the testimony submitted to the district court indicates, any concerns about performance were factored into the broader evaluation of each employee. Rahlf, Stelter and Johnson further assert that Mo-Tech's explanations to each man were inconsistent. Rahlf claims he was told he was terminated because "of a need to restructure the toolmakers area." Stelter and Johnson were told that they were being terminated due to a "lack of work." These are not inconsistent with the reasons Mo-Tech has offered for the RIF. *See* ***EEOC v. Trans State Airlines, Inc.***, 462 F.3d 987, 995 (8th Cir. 2006) (noting that "conflicting testimony is different from the type of 'shifting explanation' that we have said would give rise to an inference of pretext"). Mo-Tech maintained a consistent explanation for the termination–shifting client needs and an anticipated reduction in workload and profitability.

The judgment of the district court is affirmed.

_____