**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────

No. 12-2091

───────────

ALEXANDER HARRIS,

            Plaintiff - Appellant,

      v.

POWHATAN COUNTY SCHOOL BOARD, Powhatan County, Virginia,

            Defendant - Appellee.

───────────

Appeal from the United States District Court for the Eastern
District of Virginia, at Richmond.   John A. Gibney, Jr.,
District Judge. (3:11-cv-00224-JAG)

───────────

Argued: September 17, 2013      Decided: October 22, 2013

───────────

Before GREGORY, DAVIS, and KEENAN, Circuit Judges.

───────────

Affirmed in part, vacated in part, and remanded by unpublished
opinion.  Judge Gregory wrote the opinion, in which Judge Davis
and Judge Keenan concurred.   Judge Davis wrote a separate
concurring opinion.

───────────

**ARGUED**: Barbara Allyn Queen, LAWRENCE & ASSOCIATES, Richmond,
Virginia, for Appellant.  Stacy Leann Haney, REED SMITH, LLP,
Richmond, Virginia, for Appellee.  **ON BRIEF**: D. Patrick Lacy,
Jr., REED SMITH LLP, Richmond, Virginia, for Appellee.

───────────

Unpublished opinions are not binding precedent in this circuit.

GREGORY, Circuit Judge:

Alexander Harris appeals the district court's order granting summary judgment in favor of the Powhatan County School System ("Board") on his claims for age and race discrimination. For the following reasons, we affirm in part, vacate in part, and remand.

I.

After fifty-two years of employment with the Board, Harris' position was eliminated on March 10, 2009. J.A. 518-20. Harris, a seventy-two year-old African American, began his employment with the school district in 1957 as a custodial worker. J.A. 148. He gradually worked his way up through several supervisory positions and, most recently, was promoted to be Director of Maintenance and Custodial Services by the Current Division Superintendent, Dr. Margaret Meara. J.A. 146-58. According to his job description, Harris' responsibilities included the following: scheduling work orders; reviewing the quality of work performed by subordinates; assisting skilled workers on difficult tasks; maintaining inventory of equipment; planning and carrying out a preventative maintenance program; recruiting, training, and evaluating staff; assisting with budget preparation; and performing other duties assigned by the Superintendent. J.A. 558-59.

2

As with most school employees, Harris' employment was limited by law to annual contracts. J.A. 218-19; Va. Code Ann. § 22.1-91. This meant that each fall Harris had to fill out an intent to return form, indicating whether he wished to return for the following year. In November 2008, Harris completed the form, representing that he wanted to remain in his current position for the 2009-2010 school year. He returned the form to Paul Imig, his supervisor and the financial director for the district. J.A. 482. Imig, however, did not submit the notice as normal; instead, he held it over in order to have discussions with Harris about retiring. J.A. 483. Around the same time, Imig told Harris that his position might be eliminated even if he wished to return. J.A. 222. Dr. Meara testified that Imig told her in January or February 2009 that Harris had expressed to him a desire to retire at the end of the year. J.A. 47. Harris disputes telling Imig that he wanted to retire. J.A. 225. Dr. Meara also testified that she raised the issue with Harris herself, and that he stated he was ready to retire, but only on the condition that he receive money he believed was owed to him. J.A. 48.

Harris alleges that he had an agreement with the school system, dating back to a prior superintendent's tenure, that he would be paid an unused portion of his annual leave upon retirement. J.A. 168. Ordinarily, school system employees are

3

not allowed to carry over annual leave in excess of forty-eight days. J.A. 431-32. Harris claims that his agreement entitled him to additional compensation for annual leave he accrued during the summer months when he was not permitted to take vacations due to his responsibilities in readying the schools to open at the start of each year. J.A. 168-69. Harris estimates that he lost $19,500 over the years. J.A. 241-42.

On January 29, 2009, Dr. Meara received a letter from Harris stating that he was "considering retirement in the near future and would like to check into the recovery of the amount of annual leave that I have lost over my tenure." J.A. 434. On February 2, 2009, Imig sent a memorandum to Dr. Meara recommending that Harris' position be eliminated, noting that it would save the school system approximately $100,000 per year. J.A. 435. Imig wrote that Harris had informed him of his intention to retire, and that he was waiting for Harris to complete the necessary paperwork. At a February 10, 2009 meeting, the Board considered a proposal to eliminate fourteen staff positions, including Harris'.[1] The 2009-2010 budget

---

[1] The parties dispute when the Board first took up the matter of eliminating Harris' position. Harris contends that it was discussed during the January 27, 2009 meeting, a date which is significant because it would mean that his position was eliminated prior to Harris' letter to Dr. Meara. However, as the Board points out, the proposal is included in the minutes of
(Continued)

4

ultimately adopted by the Board included the proposed staff reductions. J.A. 429. Each of the three maintenance or custodial positions eliminated, including Harris', was occupied by an individual over the age of seventy. Id.

On March 4, 2009, Dr. Meara sent an e-mail to the Board recommending that Harris' position be formally eliminated as of July 1, 2009. J.A. 514. In a second e-mail sent March 8, 2009, Dr. Meara informed the Board that, although Harris had expressed his intent to retire, he would not leave voluntarily unless he received a large sum of money. J.A. 513. Dr. Meara communicated her opinion that Harris was holding the Board hostage because "everyone is afraid of what he and his friends will do." Id. In her deposition, Dr. Meara clarified that she meant that Harris would take his complaints to friends in the NAACP. J.A. 78. On March 10, 2009, the Board voted to eliminate Harris' position from the 2009-2010 budget. J.A. 518-20. The minutes from that meeting list Harris as having retired. J.A. 525.

On March 16, 2009, Dr. Meara and Rose Studivant, the director of personnel for the school district, met with Harris

---

the February 10 meeting and appears to have been discussed then. J.A. 505.

5

to discuss his retirement. J.A. 85. Studivant states that Harris again expressed that he wished to retire, but that it remained contingent on being compensated for his unused leave. J.A. 457. After Harris continued to make it known that he intended to return to work the following year unless he was paid for the leave time, Dr. Meara wrote him a letter informing him that his position had been eliminated and that if he wished to return he could apply for a new position. J.A. 550.

To account for the elimination of the position, the Board reassigned Harris' supervisory duties to Russell Wilson, a younger Caucasian man who was already employed by the school system, as well as two other members of the maintenance department. J.A. 433, 459. Wilson was given a $10,000 stipend for his additional responsibilities. J.A. 463.

Harris filed suit against the Board alleging violations of Title VII, 42 U.S.C. § 1981, 42 U.S.C. § 1983, and the Age Discrimination in Employment Act ("ADEA"). J.A. 17-20. The district court granted the Board's motion for summary judgment, concluding that while Harris had made out prima facie cases of race and age discrimination, he failed to show that the Board's stated non-discriminatory reasons for the termination were

pretext for discrimination. J.A. 573. Harris filed a timely notice of appeal. J.A. 580.[2]

## II.

We review a district court's grant of summary judgment <u>de novo</u>, viewing the facts in the light most favorable to the non-moving party. <u>PBM Prods., LLC v. Mead Johnson & Co.</u>, 639 F.3d 111, 119 (4th Cir. 2011). We may only affirm if we conclude that the evidence establishes that no reasonable jury could find in the plaintiff's favor. <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 251-52 (1986).

### A.

To prevail on his ADEA claim, Harris must show that age was the "but for" cause of his termination. <u>See</u> <u>Gross v. FBL Fin. Serv., Inc.</u>, 557 U.S. 167, 177 (2009) (rejecting "mixed motive" theory of liability for claims brought under the ADEA).[3] Lacking

---

[2] The district court also rejected Harris' claim that the Board failed to compensate him for his unused leave, finding that no contract existed. J.A. 575-76. Harris does not pursue this issue on appeal.

[3] Harris' argument that the "but for" standard applies only at trial is meritless. Harris cites no authority for this proposition, and it is contradicted by numerous court decisions applying the "but for" standard at the summary judgment stage. <u>See, e.g.</u>, <u>Sims v. MVM, Inc.</u>, 704 F.3d 1327, 1334 (11th Cir. 2013); <u>Billingslea v. Astrue</u>, No. 12-1528, 2012 WL 6720930, *2
(Continued)

direct evidence of discrimination, Harris proceeds under the familiar burden shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973).  See Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 285 (4th Cir. 2004) (en banc) (applying McDonnell Douglas to ADEA claim). Under this approach, "the employee, after establishing a prima facie case of discrimination, [must] demonstrate[] that the employer's proffered permissible reason for taking an adverse employment action is actually a pretext for discrimination." Id.  As the district court found and the Board concedes, Harris has established a prima facie case of age discrimination:  he is a member of a protected class, the elimination of his position was an adverse employment action, he was performing his job responsibilities adequately at the time of the adverse action, and his job duties were assumed by an individual outside the protected class.  See Holland v. Washington Homes, Inc., 487 F.3d 208, 213 (4th Cir. 2007).

Having established a prima facie case, "the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action."  Hill, 354 F.3d at

---

(4th Cir. Dec. 28, 2012); Rahlf v. Mo-Tech Corp., Inc., 642 F.3d 633, 637 (8th Cir. 2011).

8

285. If the employer successfully does so, "the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the employer's stated reasons 'were not its true reasons, but were a pretext for discrimination.'" Id. (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000)).

Here, the Board offered two reasons for its elimination of Harris' position: (1) its belief that Harris wanted to retire, and (2) its need to address a budgetary shortfall. We conclude that Harris has presented sufficient evidence from which a jury could find that both these reasons were pretext for age discrimination.

As to the first issue, a reasonable jury could find that Harris did not indicate a clear intent to retire. First, Harris submitted his notice of intent to return form to Imig in November 2008, indicating that he wished to continue working through the 2009-2010 school year. Second, Harris flatly disputes Imig's testimony that he asked to be written out of the coming year's budget, contending that he never told Imig he wanted to retire. Third, Harris' January 29, 2009 letter to Dr. Meara stated that he was merely considering retirement and that he first wanted to inquire about the annual leave funds he felt he was owed. Harris also contends that in his meeting with Dr. Meara and Studivant on March 16, 2009, he continued to

9

express that he would only leave voluntarily if he received the contested back pay amount. Viewing the record in the light most favorable to Harris, he has demonstrated a question of fact as to whether he expressed plans to retire.

The district court also erred when it determined that only the belief of the Board itself – as opposed to Dr. Meara and Imig – was relevant to determining whether the asserted reason was pretextual. The district court held that, regardless of Dr. Meara's knowledge or intent, the Board genuinely, even if mistakenly, believed that Harris wanted to retire, and that, as the ultimate decisionmaker, only the Board's views were material. Title VII defines employer as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day . . . <u>and any agent of such a person</u>." 42 U.S.C. § 2000e (2006) (emphasis added). In <u>Hill</u>, this Court explained:

> [A]n aggrieved employee who rests a discrimination claim under Title VII or the ADEA upon the discriminatory motivations of a subordinate employee must come forward with sufficient evidence that the subordinate employee possessed such authority as to be viewed as the one principally responsible for the decision or the actual decisionmaker for the employer.

354 F.3d at 291; <u>see</u> <u>also</u> <u>id.</u> at 290 ("Title VII and the ADEA do not limit the discrimination inquiry to the actions or statements of formal decisionmakers for the employer. Such a construction of those discrimination statutes would thwart the

10

very purposes of the acts by allowing employers to insulate themselves from liability simply by hiding behind the blind approvals, albeit non-biased, of formal decisionmakers."). In her position as Superintendent, Dr. Meara, with help from Imig, oversaw the annual budget process. The record shows that she interacted with Board members regarding the proposed budget, including the decision to eliminate Harris' position. Although final approval of the decision came only with a formal vote of the Board, Dr. Meara recommended this action. As the day-to-day supervisor of the school system, her recommendations on the needs of the district and the allocation of funds would carry significant weight. Under our precedent, it is therefore proper to attribute Dr. Meara's (and to a lesser extent Imig's) motives and knowledge to the Board. See id. at 288-89 ("Reeves informs us that the person allegedly acting pursuant to a discriminatory animus need not be the 'formal decisionmaker' to impose liability upon an employer for an adverse employment action, so long as the plaintiff presents sufficient evidence to establish that the subordinate was the one 'principally responsible' for, or the 'actual decisionmaker' behind, the action.").

In any event, the district court was wrong to say that the Board was completely unaware of Harris' equivocation about his plans. While the Board does not appear to have been privy to the communications between Harris, Dr. Meara, and Imig, it did

11

receive an e-mail from Dr. Meara in which she discussed Harris'
hesitation to retire without receipt of the leave funds. The
March 8, 2009 e-mail, sent two days before the Board's final
decision to eliminate the position, stated that Harris told
Dr. Meara he would not sign his retirement papers and leave
voluntarily unless he received compensation for his lost leave
time. A reasonable jury could infer that this communication
created some doubt among the Board as to Harris' desire to
retire.

All of this is sufficient to undermine the Board's
contention that Harris' position was eliminated because he
wanted to retire. Although Harris' statements about his plans
were less than crystal clear, he has managed to raise a question
of triable fact as to whether the Board legitimately believed he
intended to retire. Given the possibility that a jury could
find the Board's proffered reason to be, at best, false or, at
worst, dishonest, the same jury could likewise conclude that the
stated justification is pretext for discrimination. See Reeves,
530 U.S. at 148 ("[A] plaintiff's prima facie case, combined
with sufficient evidence to find that the employer's asserted
justification is false, may permit the trier of fact to conclude
that the employer unlawfully discriminated.").

Harris has also presented sufficient evidence casting doubt
on the Board's second proffered rationale for the termination:

12

that the school district was facing a budget crisis and could no longer afford to keep the position. First, Harris has shown that he was pressured not to return for the 2009-2010 year. Months before the March 2009 vote to approve the upcoming budget, Imig suggested to Harris that he might not have a position in the coming year and that he should consider retiring. Then, when Harris submitted his notice of intent to return form, Imig failed to sign the document and return it to Studivant in the normal course of business. Instead, Imig held the form over, noting in its margin his plan to have further discussions with Harris about retiring. Imig's attempts to persuade Harris to leave, as well as his failure to even pass along Harris' written intent to return, are subject to multiple interpretations. A jury might look at this evidence and conclude that the Board had predetermined that Harris needed to go, perhaps because of his increased age, and only conceived of the budgetary rationale after failing to convince him to retire.

Moreover, we note the importance of the fact that each of the custodial positions eliminated were occupied by individuals over the age of seventy.[4] While it is true that younger

---

[4] Although the record indicates that the two other individuals retired, the validity of this list is in dispute given that it also lists Harris as having retired, a designation which he obviously contests. J.A. 525-26.

employees in other departments were also terminated, the decision to eliminate several positions occupied by older individuals within the same department is somewhat suspicious. Working alongside Harris in the maintenance department, these individuals are better comparators than the other employees whose positions were also eliminated. A jury might conclude from these facts that the Board used age as the deciding factor in determining which positions to cut from this particular department.

Lastly, Dr. Meara acknowledged that the Board never considered the financial justification for the termination independent of its purported belief that Harris wanted to retire. She testified that she could not be sure whether the position would have been eliminated anyway. J.A. 103. Indeed, she stated that the primary reason for the termination was that she felt Harris wanted to retire. J.A. 428. We are thus persuaded against accepting, as a matter of law, the legitimacy of the Board's second proffered justification.

We note that none of Harris' evidence leads inexorably to the conclusion that the Board or anyone working for it possessed a discriminatory animus toward Harris. A jury could just as easily conclude that the Board was genuinely mistaken about Harris' plans, and that Imig prodded Harris to retire only because the position was going to be eliminated regardless of

14

what Harris wanted. However, it is not our task to weigh the evidence and make such determinations. Harris' burden at summary judgment "is one of production, not persuasion; it can involve no credibility assessment." Reeves, 530 U.S. at 142 (internal quotations omitted). When drawing all inferences in Harris' favor, he has provided sufficient evidence to contradict the Board's proffered reasons for the termination. From this evidence of contradiction, a jury might ultimately conclude that age discrimination was the actual reason for the termination.

B.

We now turn to Harris' claim of race discrimination under Title VII. It is again uncontested that Harris has established the elements of a prima facie case: Harris is a member of a protected class, he satisfactorily performed his job, he suffered an adverse employment action, and he was replaced by an individual outside the protected class. See Holland, 487 F.3d at 213. However, Harris has failed to raise an inference that race contributed to the Board's decision to eliminate his position. The sole piece of evidence adduced by Harris with respect to race is Dr. Meara's comment that Harris was holding the Board hostage through its knowledge of his friends in the NAACP. However, this statement was only made after Dr. Meara had decided to write Harris out of the budget and refers to a fear that Harris would use the threat of a lawsuit to collect

15

the contested back pay amount. It does not in anyway address Dr. Meara's or the Board's motives in eliminating Harris' position. On the other hand, the questions raised by Harris regarding the Board's proffered reasons for the termination decision, i.e., the discrepancy over Harris' plans to retire and the pressure placed on him to do so, can both reasonably be said to be related to his long tenure with the district and advanced age. Harris has produced nothing showing a similar connection between the Board's decision and his status as an African-American. Therefore, because Harris has failed to create a genuine question as to whether race played a role in his termination, the district court's dismissal of his Title VII claim must stand.

III.

For the foregoing reasons, we vacate the district court's entry of summary judgment in favor of the Board as to Harris' age discrimination claim. However, we affirm the remainder of the district court's judgment. We remand to the district court for further consideration consistent with this opinion.

AFFIRMED IN PART,
VACATED IN PART,
AND REMANDED

16

DAVIS, Circuit Judge, concurring:

I join in full Judge Gregory's opinion for the panel. I note simply, and more bluntly than does the majority opinion, that the School Board's contention that the elimination of Mr. Harris's position was based on a belief that Mr. Harris intended to retire is transparently silly. An employee's statement that "I want to retire" hardly equates to completing the paperwork attendant to retirement. And, Mr. Harris completed paperwork (never processed by the responsible agents of the defendant in the ordinary course) indicating he intended to return. Thus, the Board's decision to advance in this case his (inchoate and contingent) desire to retire as a non-pretextual reason for its adverse action significantly undermines the probity of any non-pretextual justification for the Board's adverse action.

Furthermore, as the majority opinion persuasively explains, a reasonable fact finder could reasonably find that neither the superintendent nor the Board had even begun the budgeting process aimed at reducing personnel costs by the time the decision to eliminate Mr. Harris's position had crystallized. Ante, at 14. Under the circumstances, therefore, as we hold, the ADEA claim in this case is not resolvable at the summary judgment stage.

17