# United States Court of Appeals
## For the Eighth Circuit

_____

No. 16-2186
_____

Thomas Nash

*Plaintiff - Appellant*

v.

Optomec, Inc.

*Defendant - Appellee*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: October 20, 2016
Filed: March 1, 2017

_____

Before RILEY, Chief Judge, LOKEN and BENTON, Circuit Judges.

_____

RILEY, Chief Judge.

Thomas Nash filed suit against Optomec, Inc., alleging the company fired him on account of his age in violation of the Minnesota Human Rights Act (MHRA), Minn. Stat. §§ 363A.01, et seq. The district court[1] granted Optomec's motion for

_____

[1]The Honorable Richard H. Kyle, United States District Judge for the District of Minnesota.

summary judgment, finding Nash failed to establish a prima facie case of age discrimination, and even if he had, there was insufficient evidence to suggest the lawful reason Optomec gave for its decision was pretext for an underlying unlawful motive. Nash appeals, see 28 U.S.C. § 1291 (appellate jurisdiction), and we affirm.

## I.     BACKGROUND

In fall 2011, Nash enrolled in the nanoscience technology program at Dakota County Technical College (Dakota Tech). Some time later, Nash and his classmates toured Optomec's advanced applications lab in St. Paul, Minnesota, which develops 3-D printing systems. Nash needed to complete an internship in order to finish his program, and after the tour, he decided to pursue one with Optomec. Two interviews later, John Lees, Optomec's then-49-year-old Vice President of Engineering, offered Nash a full-time paid internship for the summer and fall of 2013. The offer did not contain any guarantee of post-internship employment, nor did either party have that understanding. Nash was 54 years old when he was offered and accepted the position.

During his tenure at Optomec, Nash's duties included taking measurements, recording data, and operating and maintaining the lab equipment. Nash performed these duties alongside three interns: Travis Evans, Chenxing Pei, and Dan Bakke, each of whom was an engineering student at the University of Minnesota and in his early twenties.[2] Nash claims Lees began exhibiting a "pattern of preference" for these younger interns almost immediately. According to Nash, he received the "cold shoulder" from Lees, while Evans was sent on expenses-paid work trips and Pei made $2 more per hour than he did. Notably, neither Pei nor Bakke were ever sent on work trips, and Evans and Bakke both made $16 per hour just as Nash.

---

[2]Evans began working for Optomec before Nash did, and became an engineer with the company after his internship ended. Pei was hired shortly after Nash, and left in December 2013. Bakke began his internship in January 2014, and accepted employment elsewhere after his internship ended in August 2014.

Nash's internship ended in December 2013. Despite believing he was treated less favorably than his peers, Nash described his experience positively in post-internship reports to Dakota Tech. Nash also felt he was "very well prepared" for the internship and gave himself high marks in various performance-related categories for his self-assessment. In comparison, the district court accurately summarized Optomec's evaluation of Nash as "fairly tepid." Though commending his spreadsheet skills and "much appreciated discipline and rigor," Lees noted that tasks requiring "physical skill or dexterity" were difficult for Nash and "[u]nderstanding and troubleshooting systems [was] also a bit beyond him." Lees expressed his belief that "[p]revious interns had more learning potential."

When Nash received his associates degree from Dakota Tech he immediately inquired about a permanent position with Optomec. Lees spoke with John Wright, an engineer at Optomec, about the idea of hiring Nash. Wright, age 52, echoed Lees's concerns: Nash "wasn't a particularly skilled technician" and "required very specific instructions and step-by-step instructions on how to complete a task." But despite Wright's criticism and his own apprehension, Lees offered Nash a full-time position. Nash, now 55 years old, accepted and began work as an at-will employee in January 2014.

As Optomec's lone full-time lab technician, Nash worked on several projects over the following months that he claims demonstrated his hard work, value, and skill. Still, according to Nash, Lees continued to treat the younger interns more favorably in many of the same ways he had during Nash's internship. For example, Evans continued to be sent on work trips that "gave him troubleshooting and teamwork experiences not offered to Nash." Nash felt "humiliated" when Lees "went to great lengths to highlight his concern to other employees" about Bakke's exposure to hazardous chemicals after a lab spill in April 2014. Lees expressed no such concern about Nash's exposure despite the fact Nash, not Bakke, led the cleanup effort.

As Nash's concerns were apparently mounting, so too were Optomec's. By May 2014, Nash had amassed a considerable amount of experience, but his abilities had not grown like Wright and Lees had hoped. According to Wright, Nash "did well at following explicit instructions, but when you asked him to step back and maybe look at things []holistically, he struggled with putting that all together." Lees agreed, and believed "[Nash] was not—not progressing beyond the kind of basic lab skills. . . . [S]ome of the issues with his performance were not getting better." Nash's struggles with troubleshooting and critical thinking were an even bigger problem when Lees began to look ahead: "The business was growing. There was going to be a need to support more customers. We needed just a higher level of functionality across the board on the team." This realization led Lees to change his views as to what he wanted from lab technicians—he now considered it "a way to bring people into the technology" in hopes they would "grow and progress beyond that point." To Lees, Nash had not exhibited the capacity to "take it to that next level." Lees shared his concerns with David Ramahi, Optomec's Chief Executive Officer, who left the decision up to Lees, but encouraged him to "be decisive and take action."

Lees fired Nash on June 6, 2014, less than six months after he had hired him. Lees told Nash the decision "was not performance related," but that the company was going in a "different direction." The parties dispute exactly what happened next, yet both sides agree Nash was upset and the situation became tense as Nash complained about the lack of warning and claimed he was being discriminated against. A few days later, Nash exercised his right under Minnesota law to request a letter from Optomec explaining why he was fired. See Minn. Stat. § 181.933, subdiv. 1. In its response, Optomec noted Nash's performance was "satisfactory in terms of performing more menial tasks," but ultimately explained he "unfortunately [did] not possess the full breadth of skills required to successfully meet the challenges required of [his] position," like independent troubleshooting.

-4-

Nash filed an administrative charge with the Minnesota Department of Human Rights, which found no probable cause to believe unlawful discrimination occurred and issued him a right-to-sue letter. Nash filed suit against Optomec for age discrimination in violation of Minn. Stat. § 363A.08, subdiv. 2(2).[3] After discovery, the district court granted Optomec's motion for summary judgment, deciding Nash failed to establish his prima facie case under the familiar McDonnell Douglas burden-shifting analysis. The district court bolstered its decision by finding that even if Nash could satisfy his initial burden, "Optomec has proffered a legitimate, nondiscriminatory reason" and there was insufficient evidence "to create a genuine issue of fact as to pretext." Nash appeals.

## II.    DISCUSSION

"We review the district court's grant of summary judgment de novo and may affirm on any basis supported by the record." Tenge v. Phillips Modern Ag Co., 446 F.3d 903, 906 (8th Cir. 2006). We view the evidence in the light most favorable to Nash, see Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc), and will affirm the dismissal only if "there is no genuine dispute as to any material fact," Fed. R. Civ. P. 56(a). But if the record taken as a whole "'could not lead a rational trier of fact to find for [Nash], there is no genuine issue for trial'" and summary judgment was proper. Torgerson, 643 F.3d at 1042 (quoting Ricci v. DeStefano, 557 U.S. 557, 586 (2009)).

The MHRA prohibits an employer from discharging an employee "because of . . . age." Minn. Stat. § 363A.08, subdiv. 2(2). With few exceptions, "[w]e analyze MHRA claims using the same standards we apply to claims under the federal Age

---

[3]Nash brought this action in state court, but Optomec—a Delaware corporation with its principal place of business in New Mexico—removed the case to federal court. See 28 U.S.C. § 1332(a)(1) (diversity jurisdiction); id. § 1441 (removal).

Discrimination in Employment Act [(ADEA)]."[4] Chambers v. Travelers Cos., 668 F.3d 559, 566 (8th Cir. 2012). See generally 29 U.S.C. §§ 621, et seq. Optomec provided a non-discriminatory reason for firing Nash and "[t]he record was fully developed in the district court . . . so we may turn directly to the question whether [Nash] has presented sufficient evidence to raise a genuine issue for trial on the ultimate question of age discrimination *vel non*." Noreen v. PharMerica Corp., 833 F.3d 988, 992 (8th Cir. 2016).

We begin by noting our agreement with the district court that "[t]he fact that Evans and Bakke might have assumed Nash's duties for a short time does not suggest that age played a part in Nash's termination." Although replacement by substantially younger employees may allow for an inference of discrimination, the "important datum" is the age of Nash's *permanent* replacement, Lewis v. St. Cloud State Univ., 467 F.3d 1133, 1136-37 (8th Cir. 2006), and here there simply was none. Even if we accept Nash's position that his duties went exclusively to Evans and Bakke—which requires ignoring Nash's admission that he does not know who assumed his duties and Wright's (age 52) testimony that he had to "pick up" most of them—such workload redistribution was temporary. That Nash was terminated around the time Evans and Bakke returned to full-time status does not change the fact their internships were scheduled to (and indeed, did) end in August 2014.

Moving on, the overarching reason Optomec gave for firing Nash was that he lacked the skill set and potential Optomec wanted from lab technicians to account for

---

[4]One possible exception relates to Nash's ultimate burden under the MHRA. Optomec calls for the but-for standard applicable to ADEA plaintiffs. See, e.g., Rahlf v. Mo-Tech Corp., 642 F.3d 633, 636-37, 636 n.2 (8th Cir. 2011). Nash counters that MHRA plaintiffs need only show age was a "motivating factor." See, e.g., Noreen v. PharMerica Corp., 833 F.3d 988, 992-94 (8th Cir. 2016). The district court took the prudent approach by applying the "less-stringent 'motivating factor' standard," and we will do the same because we agree Optomec is entitled to summary judgment under either standard.

the company's anticipated growth. Nash argues this explanation has "no basis in fact" because his shortcomings (e.g., independent troubleshooting) were not part of his job description or ever asked of him. This argument misses the point. As the district court recognized, it was the company's "vision for the *future* of the lab technician position, and Nash's inability to fit that vision, that led to his dismissal." We are not convinced by Nash's suggestion that this is a "similar situation" to Gaworski v. ITT Commercial Finance Corp., 17 F.3d 1104, 1110 (8th Cir. 1994), where we questioned the employer's claim that it fired the plaintiff for inferior computer skills. There, the employer did not tell the plaintiff that it considered computer skills "'critical'" even though the plaintiff had demonstrated an "ability to grasp new concepts" and the employer admitted that, if asked, the plaintiff probably could have learned the computer system. Id. Conversely, here Optomec noted from the very beginning and throughout litigation its belief both that Nash lacked the ability to adequately troubleshoot issues and that he exhibited little ability to progress and acquire new skills. There is no evidence to suggest Optomec failed to notify Nash—an at-will employee and not entitled to any advance warning under company policy—of his alleged deficiencies "for fear that he might correct them." Ryther v. KARE 11, 108 F.3d 832, 841 (8th Cir. 1997) (en banc). To the contrary, Optomec hired Nash despite these shortcomings in hopes that he *would* correct them, but he did not.

Nash next argues Optomec changed its explanation in a way that suggests an underlying discriminatory animus. It is true an employer's shifting explanation can be probative of discriminatory motive, but our case law is clear the change must be "'substantial.'" Johnson v. Securitas Sec. Servs. USA, Inc., 769 F.3d 605, 613 (8th Cir. 2014) (en banc) (quoting Bone v. G4S Youth Servs. LLC, 686 F.3d 948, 957 (8th Cir. 2012)). Nash tries to construct a "substantial difference" by contrasting Lees's initial statement that the decision "was not performance related" with the subsequent letter from Optomec's corporate counsel explaining Nash lacked "the full breadth of skills required to successfully meet the challenges required" of his position. We do not consider this a substantial change when, as here, various employees explain or

elaborate on the decision to fire the plaintiff in ways that are slightly different, but nonetheless consistent with the overall reason stated by the employer. See id. We are satisfied every explanation in the record fits with the general notion that, although Nash's performance was "satisfactory in terms of performing more menial tasks," Optomec believed he lacked the skills or capacity to "grow" alongside the company and fill their anticipated needs.

Nash also contends Lees exhibited favoritism towards the younger interns, but the district court's well-reasoned opinion correctly characterized Nash's evidence as "'weak and not probative of discrimination.'" (Quoting Pivirotto v. Innovative Sys., Inc., 191 F.3d 344, 359 (3d Cir. 1999)). True, Nash was never afforded the opportunity to travel on Optomec's behalf as Evans was, but neither was Pei or Bakke, and there is no reason to discredit the unrebutted testimony that Lees sent Evans because of his superior experience, skill, and success with previous trips. Cf. Torgerson, 643 F.3d at 1051 (noting instances of alleged disparate treatment are only probative if the comparators are "similarly situated in all relevant respects—a rigorous standard" (internal quotation marks omitted)). In his deposition, Lees justified Pei's higher pay rate on the basis "[h]e was an outstanding student and an exceptional young engineer." Nash clings to Lees's use of "young," but "young" could be synonymous with "new," and we consider this to be a textbook example of a "stray remark" unrelated to the decisional process. See Twymon v. Wells Fargo & Co., 462 F.3d 925, 933-34 (8th Cir. 2006). The district court was correct to disregard the other "trivial matters," such as the chemical spill and the perceived "cold shoulder." See Sprenger v. Fed. Home Loan Bank of Des Moines, 253 F.3d 1106, 1113 (8th Cir. 2001) ("[W]e hesitate to rely on isolated comments as proof of bias lest the law become a 'general civility code.'" (citation omitted) (quoting Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80 (1998))).

We are similarly unconvinced by Nash's other arguments. Nash points to instances where Lees criticized him for "physical dexterity issues," an "inability to

think on his feet," and "stubbornness" to suggest Lees harbored ageist stereotypes that motivated his decision. However unlike the cases Nash cites, see, e.g., Hilde v. City of Eveleth, 777 F.3d 998, 1005-06 (8th Cir. 2015) (retirement age), these statements are generic workplace criticisms used to explain many terminations regardless of the employee's age. That these comments were not directed at the younger interns does not suggest they were age-based, but only that Lees did not think these issues similarly plagued their performance. Nash also suggests he is entitled to a favorable inference because neither Lees nor Wright immediately denied his allegations of age discrimination at the termination meeting. The two cases Nash cites to support this proposition—Baxter v. Palmigiano, 425 U.S. 308, 316-20 (1976), and National Acceptance Co. of America v. Balthalter, 705 F.2d 924, 926-30 (7th Cir. 1983)—were both rooted in Fifth Amendment principles that are not applicable here. Allowing for any sort of adverse inference would be unsupported by law and seemingly require employers to risk further escalation of an already tense situation by engaging with a distressed employee upon termination. We think it unwise to create such a rule.

Whatever small amount of combined probative value the above-described evidence has is eroded when we apply two well-established presumptions to the undisputed facts at hand. First, it is significant that Nash was hired and fired "'within a relatively short period of time.'" Arraleh v. County of Ramsey, 461 F.3d 967, 976 (8th Cir. 2006) (quoting Herr v. Airborne Freight Corp., 130 F.3d 359, 363 (8th Cir. 1997)); accord Haigh v. Gelita USA, Inc., 632 F.3d 464, 470 (8th Cir. 2011) ("'We have noted it is unlikely a supervisor would hire an older employee and then discriminate on the basis of age, and such evidence creates a presumption against discrimination.'" (quoting Fitzgerald v. Action, Inc., 521 F.3d 867, 877 (8th Cir. 2008))); Lowe v. J.B. Hunt Transp., Inc., 963 F.2d 173, 175 (8th Cir. 1992) ("It is simply incredible, in light of the weakness of plaintiff's evidence otherwise, that the company officials who hired him at age fifty-one had suddenly developed an aversion to older people less than two years later."). Second, the fact Lees himself was only five years younger than Nash when he made the decision both to hire and fire Nash

also "run[s] counter to any reasonable inference of discrimination based on age." Rothmeier v. Inv. Advisers, Inc., 85 F.3d 1328, 1337 (8th Cir. 1996); see also Bone, 686 F.3d at 956 n.3; Lowe, 963 F.2d at 174-75.

Nash attempts to avoid these presumptions by arguing they do not apply to MHRA claims, but "[t]he Minnesota Supreme Court has held time and again that MHRA claims are to be construed in accordance with federal precedent. We see no reason why the Minnesota Supreme Court would deviate from federal precedent now." Rothmeier, 85 F.3d at 1338-39 (citation omitted) (applying these presumptions to both the ADEA and MHRA). Nash also suggests such presumptions are improper under Tolan v. Cotton, 572 U.S. ____, 134 S. Ct. 1861 (2014), and Torgerson, 643 F.3d at 1043, but this argument does not move the needle. Those cases merely remind us that we are not to credit Optomec's version of *disputed* facts, see Tolan, 572 U.S. at ____, 134 S. Ct. at 1868, or treat motions for summary judgment more harshly in the employment-discrimination context, see Torgerson, 643 F.3d at 1043. See generally Fed. R. Civ. P. 56(a). Here it is *undisputed* that Nash was hired to be an intern (age 54), hired permanently (age 55), and fired (age 55), all by the similarly aged Lees and all events occurring within less than a year. Looking to these facts and applying these presumptions does not run contrary to Rule 56, Tolan, or Torgerson. Cf. Buytendorp v. Extendicare Health Servs., Inc., 498 F.3d 826, 836 (8th Cir. 2007) (noting "[w]e need not ignore undisputed facts" at the summary judgment stage).

III. CONCLUSION

We conclude Nash failed to present sufficient evidence to raise a genuine issue for trial as to whether Optomec discriminated against him on the basis of age. Therefore, we affirm.

_____